445 P.2d 663

Richard OPENSHAW and Hope Openshaw, husband and wife, Judy Wilson and How-ard Ward, Plaintiffs-Appellants,

v.

Gordon ADAMS and Marine Adams, hus-band and wife, Defend-ants-Respondents.

No. 10033.

Supreme Court of Idaho.

Sept. 16, 1968.

Rehearing Denied Oct. 21, 1968.

7. Intervenor's Brief, p. 17.

8. See I.C. § 34-401.

**490**

Kramer, Plankey & Meehl, Twin Falls, for appellants.

Benoit, Benoit & Alexander, Twin Falls, James, Hobdey & Shaw, Gooding, for respondents.

McQUADE, Justice.

Action for damages resulting from an automobile collision. Gordon Adams was driving a pickup truck which collided at an intersection on Idaho State Highway 25 between Wendell and Hagerman with a car in which the four appellants were riding; respondent Marine Adams, Gordon's wife, was driving a car about twenty-five yards behind Gordon's truck at the time of the accident. Appellants brought their action against both Adamses: Gordon, for allegedly running a stop sign and for failure to look ahead; Marine, for allegedly honking her car's horn in a gesture of greeting to Gordon just before the collision, thereby distracting him. The action was tried to a jury which returned a verdict against Gordon, for (combined total) about $100,000.00, and for Marine. This is an appeal from that part of the judgment entered on the verdict absolving Marine. Gordon has not appealed from the judgment against him.

We have found error in several of the points assigned as error by appellants. However, none of these errors, nor their combined effect, has caused sufficient prejudice to constitute reversible error. And so the judgment appealed from is affirmed. But because of the importance of the subject matter of certain non-prejudicial errors committed in the trial of this action, they are discussed in parts of the following opinion.

Initially, we note that there is sufficient evidence in the record as it appears before us to require upholding the jury verdict for respondent Marine Adams. Appellants' theory with respect to liability of Marine was: she honked her horn at Gordon just as he reached the intersection; he heard it and his attention was distracted from the road ahead; and this distraction caused the collision. However, Gordon Adams's testimony contains the following:

"Q. Mr. Adams, did you ever, prior to that accident, hear a horn honking behind you?

"A. I did not."

His further testimony is corroborative: he said he remembered nothing about a horn honking and he was not aware that Marine may have tried to get his attention—although he had seen her, perhaps through a rear-view mirror.

Appellants' evidence on this point was the following testimony. Appellant Richard Openshaw said that just after the accident, the Adamses had visited him in the hospital and there Marine had said she had honked the horn and distracted Gordon who then "was looking at me, and we just didn't see you." A deputy sheriff of Gooding County, Bill Bunn, said he investigated the accident and that either Gordon or Marine told him Marine honked and Gordon looked back over his shoulder. Appellant Hope Openshaw said that right after the accident, she heard a voice (apparently Gordon Adams's) say: "I just didn't see them. My head was

turned. I was looking at my wife. She was hollering and honking at me."

However, Gordon denied the alleged assertions concerning honking made in the hospital room conversation and denied having made at the accident scene the statement attributed to him by Hope Openshaw. Marine Adams said she did not remember discussing in the hotel room the subject of horn honking. Concerning Bill Bunn's testimony, both respondents said they did not remember any discussion of horn honking or head turning. Finally, Hope and Richard Openshaw each made statements concerning the accident to an insurance investigator, which contained no reference to horn honking (however, as will be discussed infra, parts I and II appellants contend that there were good reasons for such silence, primarily that they considered the incident irrelevant to the investigation).

Appellants do not deny that the evidence in the record would require affirmance. However, they contend that each of three separate rulings by the district court rejecting certain evidence offered by appellants was reversible error. The challenged rulings are:

(1) Not permitting Mrs. Openshaw to testify that prior to trial, in a deposition given January 6, 1966, to respondents' attorney, she spoke of the horn honking incident.

(2) Not permitting Mr. Openshaw to explain more fully why a written statement made by him to an insurance adjuster was silent about the horn honking.

(3) (a) Quashing appellants' subpoena duces tecum addressed to an insurance adjuster who had taken certain statements from the parties during an investigation of the accident; and,

(b) Not permitting the adjuster to testify concerning contents of the subpoenaed statements.

These alleged errors will be considered in that order. Wherever pertinent, additional facts will be discussed.

## I. EVIDENCE OF PRIOR CONSISTENT STATEMENTS

*Facts.*

The accident occurred on April 1, 1965. April 27, 1965, Hope Openshaw gave an account of the accident to an insurance adjuster. The transcription is about forty typewritten lines and contains only the following in reference to Marine Adams's role in the accident:

"Afterwards when I was lying on the ground I heard a man, presumably Mr. Adams, say 'I did not see the car; I was looking in my mirror at my wife and a car she was in', or words to this effect."

On cross-examination at trial, respondents' attorney read to Mrs. Openshaw the quoted remarks and then asked:

"Q. There is nothing about Mr. Adams' saying at the scene, as you testified yesterday, his wife was hollering at him and honking the horn. There is nothing in that statement, is there?"

Mrs. Openshaw answered:

"A. No. But I want you to know at the time this was taken I was with my husband, and he was critically ill, and I don't remember what I said."

For purposes of "rehabilitation" as a witness, on redirect examination Mrs. Openshaw testified that while respondents' attorney was taking her deposition[1] January 4, 1966 (complaint having been filed in December 1965), she told him about the horn honking incident. On objection, the court ordered the answer stricken and the jury admonished not to consider it.

However, appellants' attorney clarified that:

"Q. This statement is typed. Did you type it?

"A. No, I didn't.

"Q. So when Mr. Benoit says that you said a certain thing, what actually has happened is somebody typed this up and

[1] The deposition is not contained in the papers before this Court.

you signed the statement at the hospital, is that right?

"A. Yes, and I have never seen this before."

And immediately after the court's exclusionary order on the prior consistent statement, Mrs. Openshaw's testimony contains the following:

"Q. Assuming there was a man who came to the hospital in Salt Lake City to talk to you, did he ask if Mrs. Adams honked her horn?

"A. No, he didn't ask me anything about horn honking."

*Contentions.*

Appellants assign error in the court's ruling excluding such testimony. They contend that Mrs. Openshaw's statement to Benoit was "consistent" with her story at trial concerning horn honking and was probative that she had always believed in the horn honking incident. As such, the statement indicated that her failure to mention the horn honking to the insurance adjuster must have been because she failed to recognize its significance in the context of her conversation with the adjuster.

Respondents point out that though ordered stricken, in fact Mrs. Openshaw's remarks came before the jury. Further, appellants cite the following chronology: Mrs. Openshaw's statement to the insurance adjuster was dated April 27, 1965; the amended complaint was dated December 30, 1965; her remarks to Benoit were on January 4, 1966, after the suit was filed and during preparation for trial. Therefore, respondent argues, Mrs. Openshaw's remarks to Benoit during the discovery deposition were obviously self-serving. Respondents also

contend that such evidence would have added nothing worthwhile to the case because it was no different than Mrs. Openshaw's statement at trial.

*Discussion.*

The specific problem of present concern comes before this Court for the first time in this action.[2] Because of its importance to trial administration, we have considered the problem at length.

■ It is settled that upon introduction of evidence which seemingly impeaches or contradicts a witness's testimony, the witness must be permitted a reasonable opportunity to explain the impeaching evidence.[3] Somewhat akin to this rule is appellants' contention that Hope Openshaw had the privilege to testify that prior to the trial she had told respondents' attorney about the horn honking incident. Appellants argue that Hope Openshaw's written statement to the insurance adjuster, being silent concerning the horn honking incident, was interpretable as inconsistent with her testimony at trial, and that upon such impeachment she was privileged to rehabilitate herself by showing that prior to trial she also had made statements consistent with her present testimony.

Generally, the problem may be posed as follows: a witness testifies; such testimony is impeached on cross-examination by evidence that prior to trial the witness made a statement contrary to or inconsistent with his testimony; in order to "rehabilitate" the witness, it is sought to introduce other statements of the witness also made before trial which are consistent with his present testimony. In effect, such a showing is an attempt to neutralize the detrac-

2. In a 1911 case, State v. Moon, 20 Idaho 202, 117 P. 757, the Court recognized the breadth of the problem but found it unnecessary to resolve on the facts presented.

3. Idaho Placer Min. Co., Ltd. v. Green, 14 Idaho 249, 93 P. 954 (1908); Douglas v. Douglas, 4 Idaho 293, 38 P. 934 (1895); cf. Estate of Brown, 52 Idaho 286, 302, 15 P.2d 604, 609 (1932); cf., State v.

Main, 37 Idaho 449, 461, 216 P. 731, 734–735 (1923) (right to explain inconsistency overcome by rule excluding prejudicial hearsay); see generally 3 Wigmore, Evidence § 1044 (3d ed. 1940) (inconsistency can always be explained "by relating whatever circumstances would naturally remove it.") And see the discussion in this rule as applied in the context of the present action, infra part II (beginning at text preceding n. 11).

tion of prior negative remarks by reinforcement of prior positive remarks, and thus to leave the present testimony standing unimpeached. The question is: under what circumstances is it error to exclude such evidence.

Preliminarily, a few summary observations may be a helpful introduction to discussion of the specific rules which have developed in this area. It appears from study of pertinent authority that the basic element governing admissibility of such evidence concerns the quality of its probative value. In this regard, it is often important to consider the timing of the prior consistent statement in relation to the occurrence spoken of, to the prior inconsistent statement, and to the trial. Of even greater importance is the precise purpose for which such evidence is offered, e. g. is the fact of the inconsistent statement admitted or not challenged, so that introduction of the consistent statement is merely to buttress by repetition the trial testimony? Or has the witness denied making the inconsistent statement, so that he now seeks by introduction of the consistent statement to buttress his denial? Also important are other circumstances pertinent to probative value of the consistent statement, e. g. whether made before or after contemplation of suit.

More specifically, the weight of authority holds that such evidence should not be admitted.[4] The principal reason underlying this exclusion is that such evidence, strictly considered, is simply not relevant rebuttal to the impeachment. The impeacher has shown that prior to trial the witness has made a statement contradictory of or inconsistent with his trial testimony. Conceding such self contradiction, the witness does not eliminate it or explain it away by saying: "Yes, but on still another occasion I remarked consistently with my present position." This response ignores the thrust of the impeachment and in effect invites a spurious truth-telling contest somewhat reminiscent of trial by compurgation. Professor Wigmore has said, assuming a conceded self contradiction,

> "it remains as a damaging fact and is in no sense explained away by the consistent statement. It is just as discrediting, if it was once uttered, even though the other story has been consistently told a score of times." [5]

There are, however, exceptions to this rule.[6] A common exception permits such evidence when the impeaching self contradiction is alleged to be or is at least interpretable as proof that the trial testimony is part of a recently contrived fabrication. In that situation, evidence of statements consistent with the present testimony, made before the fabrication was supposed to have been contrived, should be admitted to dispel the allegation of fabrication.[7] Similarly, if the impeachment

---

4. See Ellicott and Meredith v. Pearl, 10 Pet. (U.S.) 412, 439, 9 L.Ed. 475, 486 (1836) (opinion by Story, J.); Waldrep v. Southern Railway Company, 266 Ala. 652, 98 So.2d 614 (1957); Wilson v. Jeffrey, 328 Mass. 192, 102 N.E.2d 426 (1951); Crawford v. Nilan, 289 N.Y. 444, 46 N.E.2d 512 (1943); Shellock v. Klempay Brothers, 167 Ohio St. 279, 148 N.E.2d 57, 75 A.L.R.2d 900, 4 Ohio Ops. 2d 318 (1958); State v. Dickens, 66 Wash.2d 58, 401 P.2d 321, 324–325 (1965); Annot., Admissibility For Purpose Of Supporting Impeached Witness Of Prior Statements By Him Consistent With His Testimony, 75 A.L.R.2d 909, § 15, pp. 930–933 (1961); IV Wigmore, Evidence § 1126 (3d ed. 1940); McCormick, Evidence § 49, pp. 108–109

(Hornbook ed. 1954); 2 Conrad, Modern Trial Evidence § 1156 (1956); 3 Jones, Evidence § 869 (4th ed. 1938). Contra, Stafford v. Lyon, 413 S.W.2d 495 (Mo. 1967); State v. Sibert, 6 Utah 2d 198, 310 P.2d 388 (1957); Copes v. United States, 120 U.S.App.D.C. 234, 345 F.2d 723 (1964); and see cases noted in Annot., 75 A.L.R.2d 909, § 16, pp. 933–934 (1961).

5. IV Wigmore, Evidence § 1126, p. 197 (3d ed. 1940).

6. In general as to such exceptions see Annot. 75 A.L.R.2d 909, 935 et seq. (1961); McCormick, Evidence § 49 (Hornbook ed. 1954); 3 Jones, Evidence § 870 (4th ed. 1938).

7. State v. Moon, supra n. 2.

by prior inconsistency is part of a chain of proof addressed to establishing bias or prejudice of the witness, prior consistent statements made before the bias allegedly arose should be admitted to gainsay the fact of bias. And when the witness denies having made the alleged inconsistent statement, he should be permitted to show consistent statements made about the time of the alleged inconsistency to support his denial.[8] Also, when the inconsistent statement indicates the witness has a faulty memory, consistent statements made before the inconsistent statement and near in time to the occurrence spoken of ought to be admitted to indicate the witness's true belief.[9]

However, upon analysis these "exceptions" appear in fact to be common sense aids to the trial court's assessment in a specific factual setting of the probative quality of offered evidence concerning prior consistent statements. As a matter of good judgment, the appearance of facts constituting one of these exceptions enhances the probative value of certain prior consistent statements. Accordingly, the decision to admit or reject evidence of consistent statements is committed to the sound discretion of the trial court.[10]

■ Examining the evidence in light of the rules just discussed, certain points stand out. First, concerning the alleged inconsistent statement the fact of mere silence about horn honking is not directly contradictory to or inconsistent with Mrs. Openshaw's trial testimony, especially considering the evidence that she had not been asked about it; nevertheless, an inference of inconsistency would be warranted. In this vein, however, it is important to recognize that appellants sought to introduce the prior consistent statement to show that Mrs. Openshaw's silence should not be

construed as inconsistent with her trial testimony. This line of argument is in effect a denial that Mrs. Openshaw did make an inconsistent statement, and as such the consistent statement would have increased probative value as recognized in one of the "exceptions" discussed above. And next, concerning the proffered consistent statement, several circumstances tend to weaken its probative value, but none to enhance it. It was spoken nine months after the accident; eight months after the alleged inconsistent statement; after the action had been instituted; and in a definite context of litigation.

It is our conclusion that the district court was within its discretion in excluding Mrs. Openshaw's testimony concerning her statement to respondents' attorney. Even assuming that appellants sought admission to support their "denial" that the silence presented an inconsistency, the consistent statement was not close in time to the inconsistent, and the other factors mentioned militate against a finding of error. However, neither would the admission of such testimony have been error. In this regard we note that generally such rehabilitating testimony does not seem potentially prejudicial; it appears only collateral and in some instances irrelevant.

## II. EXPLAINING CIRCUMSTANCES OF ACCOUNT OF ACCIDENT RELATED TO INSURANCE ADJUSTER

*Facts.*

Shortly after the accident, three days before Hope Openshaw gave her account of the accident to the insurance adjuster, Richard Openshaw gave a similar account, apparently to the same adjuster. At the time, Richard still was in the hospital. Like Hope's account, Richard's was silent

---

8. See Donovan v. Moore-McCormack Lines, 266 App.Div. 406, 42 N.Y.S.2d 441 (1943); see also Thomas v. Ganezer, 137 Conn. 415, 78 A.2d 539 (1951); and see cases noted in Annot., 140 A.L.R. 21, § 3b, p. 68 (1942).

9. Cf. Thomas v. Ganezer, supra n. 8.

10. E. g. Johnson v. Smitz, 274 Wis. 96, 79 N.W.2d 337 (1956) (evidence excluded); Dickeson v. Baltimore & Ohio Chicago Ter. R. R. Co., 73 Ill.App.2d 5, 220 N.E.2d 43 (1966) (evidence admitted).

concerning the horn honking incident, a fact which Richard admitted in response to a question during cross-examination. On redirect examination, Richard explained his silence as follows:

"A. I had never been questioned about it. I thought there was nothing relevant to the case at hand about the horn honking at the time.

"Q. And was there any discussion about this subject by this man who came and took your statement?

"A. No, there was not."

Openshaw further explained: he had not written the statement himself, rather "some man that introduced himself to me" wrote it down; he first had met the man just before such transcription; he was not given a copy of the statement and prior to the trial had never seen it (his wife read it to him before he signed it). Openshaw did not state that the man was, or had introduced himself as, an insurance adjuster. The transcribed statement was admitted as an exhibit (as admitted, it made no reference to insurance).

Not satisfied with this explanation, the attorney representing Openshaw (and the other appellants) wanted to pursue further the circumstances of Openshaw's transcribed account. In chambers, he made the following offer of proof:

"This witness, if permitted, will testify he was in the hospital and how the adjuster came in and said, 'I represent Allstate Insurance Company and I am here to take a statement because you want to settle the case and there is insurance. I want to get your statement.'"

He said he was asserting "the right to * * * explain who this man was and how he induced that statement." The court refused to permit such proof.

*Discussion.*

We agree with appellants that the court's refusal was error.[11] Appellants contend

that an insurance adjuster, hired by an insurer with interests adverse and hostile to an injured person, came into their hospital room, established the line of discussion which becomes the content of the injured person's statement, and then months later the insurer uses the absence of a fact from the slanted statement as proof controverting the injured person's claim that such fact did occur.

We hold that when the attorney nominally representing respondents, in fact representing the insurer, offered proof that the statement given by Richard Openshaw to the insurance adjuster was silent concerning the horn honking incident, he opened up the subject and authorized Openshaw to relate all pertinent circumstances explaining his omission, including the identity of his interrogator, that he had been retained by someone having interests adverse and hostile to Openshaw, and the specific purpose of the interrogator's visit. Of course the circumstances related must be relevant to the impeachment, and not merely a guise to introduce the involvement of insurance.

■ However, on the facts of the present action we do not think the error requires reversal.[12] A partial explanation of the silence was permitted, and the entire transcribed statement was admitted. And it does not appear from the record that even a totally unexplained silence (as opposed to an express contradiction) would seriously damage the credibility of Openshaw's trial testimony.

*Subsidiary issue re: order augmenting record.*

Two and one-half months after trial, at the request of appellants but over objection by respondents, the district court augmented the record by entering an order which discussed the conference in chambers concerning the privilege of Richard Openshaw to relate more fully the

11. As to the general right to explain impeaching inconsistent statements, see authority cited n. 3, supra.

12. See Idaho R.Civ.P. 61 (harmless error).

**496**

circumstances of his statement to the adjuster. This order states in part that appellants' counsel

> "requested permission to show all the circumstances under which said statements were taken; and the Court advised plaintiffs' [appellants'] counsel that if such information were elicited before the jury, a mistrial would be declared."

Respondent by motion before this Court asks that this order be stricken.

 The order augmenting the record was not sound practice. As a court of record, the district court should make its record of the offer and the admission or exclusion of evidence at the time of the court's ruling. Idaho R.Civ.P. 43(c) provides in part that after an offer of proof

> "The court may add such other or further statement as clearly shows the character of the evidence, the form in which it was offered, the objection made, and the ruling thereon."

Consonant with sound judicial administration, however, the quoted provision must be construed as intending that such addition to the record be contemporaneous with the court's ruling. This is not to be construed as contrary to the established rule that a court of record may at a subsequent time make the record speak the truth or conform to the occurrences or rulings which took place at the trial.[13]

Nevertheless, in the present action the record without this augmenting order sufficiently indicates for purposes of review on appeal the basis of the court's ruling excluding the offered evidence. Moreover, our decision to affirm renders this error harmless. However, in a case where a party had substantial objection to the content of a tardily prepared augmenting order such as the one of present concern, the error might be cause for reversal.

### III. PRODUCTION OF AND TESTIMONY CONCERNING ADAMSES' STATEMENTS TO INSURANCE ADJUSTER

An insurance investigator and adjuster, G. D. Anderson, was served at appellants' request with a subpoena duces tecum ordering production of certain material received during his investigation of the accident. No copy of the subpoena is in the record, but apparently its coverage included all written transcriptions of statements made to him by parties or witnesses to the accident. In this regard, appellants' attorney told the court:

> "We intend to call this man and ask him what statements he took and what he received. In the first place, we know he took statements from our clients which we have never been allowed to see. He took statements also from Gordon and Marine Adams and he took pictures and investigated as an expert investigator in this type thing."

It appears from briefs and oral argument on this appeal that the basic reason prompting appellants' attorney's request for Anderson's papers was a belief that among them were statements by the Adamses which may have contained remarks concerning the horn honking incident. Such remarks, if they existed, might of course have served to impeach trial testimony by the Adamses. But although appellants' counsel had taken the depositions of both Adamses, he did not know, for all that appears, the pertinent contents of the statements they had made to Anderson, nor even whether such statements contained references to the horn honking incident. The attorney said: "I don't know either [sic] what he [Anderson] is going to say. I have never talked to him."

Upon discussion by counsel and the court in the absence of the jury, it developed that respondents' attorney apparently possessed whatever statements Anderson had taken. Appellants' attorney then asked the court

---

13. 4A C.J.S. Appeal and Error § 1116; c. f. Fed. R.Civ.P. 75(h) and 9 Moore's Federal Practice ¶ 75.15 [1].

to order respondents' attorney to produce the statements. The court refused and upon motion quashed the subpoena duces tecum. Likewise, the court refused "any introduction of the statements." Appellants claim the court erred in both rulings.

■ On the facts just summarized, we hold that the court did not commit reversible error either by quashing the subpoena or by refusing to permit testimony concerning the contents of the supposed statements made by Adamses to Anderson. If appellants' attorney had determined before trial that the statements of Adamses taken by Anderson did contain language relevant to the alleged horn honking incident, and if he had so informed the court, it would have been erroneous for the court not to have at least studied the documents to see if they had such references. And if they did, production of the relevant parts would be required. However, appellants' attorney's blanket request in the present action was not sufficient to make such production mandatory. The Adamses statements, assuming such exist, are not before this Court and so we are unable even to determine if the statements do contain pertinent matter.

■ The district judge did not expressly rely on the reasoning just stated to support his refusal to compel production of the Adamses' statements or to admit testimony concerning their contents. Rather, he supported the ruling by his interpretation of Idaho R.Civ.P. 26(b). This reliance was misplaced (as will be discussed immediately following) but, as has just been explained, the ruling was nonetheless correct and it will not be disturbed merely because the court offered a wrong reason to support it.[14]

Again because of the importance of the subject, we find it worthwhile to discuss the erroneous reason offered for the exclusionary ruling on Adamses' statements.

Idaho R.Civ.P. 26 concerns "Depositions pending action" (26 [a]) and provides in part (26 [b]):

"The deponent shall not be required to produce or submit for inspection any writing, obtained or prepared by the adverse party, his attorney, surety, indemnitor, or agent in anticipation of litigation and in preparation for trial unless the court otherwise order on the ground that a denial of production or inspection will result in an injustice or undue hardship."

The court reasoned from this rule that "You cannot do indirectly by subpoena duces tecum in a trial that which the statutes prohibits you from doing in pretrial discovery."

[15] In the present action we find it unnecessary to enter a full scale discussion of Idaho R.Civ.P. 26(b). We appreciate the thorough discussion of this subject contained, understandably in light of the district court's remarks, in the briefs but we do not think this action is the place to resolve such arguments. Nevertheless, a few observations are in order. Earlier in this part (III) of the opinion, we discussed the relation between discovery work and the right to insist upon production of evidence at trial. In that discussion we said that had appellants' counsel through discovery constructed a correct foundation, the court would have been required to accede in substance to appellants' demands for production of certain evidence. Somewhat similarly, Idaho R.Civ.P. 26(b) provides for production or inspection during the discovery process, of otherwise privileged writings upon a proper showing that denial "will result in an injustice or undue hardship." On the present record we cannot—nor need we—determine if the statements obtained by Anderson were taken "in anticipation of litigation and in preparation for trial." On that question we ex-

14. See Servel v. Corbett, 49 Idaho 536, 290 P. 200 (1930); Valentine v. Rosenhaupt, 19 Idaho 130, 112 P. 685 (1910); cf. Idaho R.Civ.P. 61; Layrite Products Co. v. Lux, 91 Idaho 110, 416 P.2d 501 (1966).

press no opinion. However, during the discovery process, had appellants' counsel determined that the Adamses were denying their alleged remarks about the horn honking incident counsel could have presented these facts to the court. And upon such a showing the court would have abused its discretion if it refused to order production or inspection (though qualified by whatever precautions necessary to protect the insurer's legitimate interests) on grounds of injustice or undue hardship.

Judgment affirmed. Costs to respondents.

TAYLOR and SPEAR, JJ., concur.

SMITH, C. J., and McFADDEN, J., concur in the conclusion.