487 P.2d 929

**Richard OPENSHAW and Hope Openshaw, husband and wife, Plaintiffs-Appellants,**

**v.**

**OREGON AUTOMOBILE INSURANCE COMPANY, a foreign corporation, Defendant-Respondent.**

**No. 10741.**

Supreme Court of Idaho.

Aug. 2, 1971.

**336**

Kramer, Plankey, & Meehl, Twin Falls, for plaintiffs-appellants.

Parry, Robertson, Daly & Larson, Twin Falls, for defendant-respondent.

McFADDEN, Justice.

This litigation arises from activities by the Openshaws' insurance company, Oregon Automobile Insurance Company, while a trial between the Openshaws and third persons was taking place. The trial referred to concerned an automobile accident near Wendell, Idaho, wherein the Openshaw vehicle collided with a truck owned and operated by Gordon Adams. The Openshaws were granted judgment in their favor for approximately $99,000.00.[1]

The following factual details provide the framework for the questions on this appeal.

On May 1, 1965, after the accident on April 1, 1965, appellant Richard Openshaw gave a written statement describing the details of the accident to an agent of his insurance company, respondent herein. Previously, Mr. and Mrs. Openshaw had given statements to a claims adjuster who represented Allstate Insurance Company, the insurer of the vehicle driven by Gordon Adams. Settlement negotiations between the parties, the Openshaws and the Adamses, proved fruitless and the action instituted by the Openshaws against the Adamses went to trial.

At that trial, the Openshaws attempted to prove negligence by Gordon Adams as well as Mrs. Adams, both of whom were driving separate vehicles. During the course of the trial, defense counsel representing Allstate determined he was faced with a possible conflict in the testimony after he compared written statements of the Openshaws which described the events concerning the collision with the testimony adduced at trial. Doubtless with the thought of impeaching Richard Openshaw, defense counsel had a representative of

1. The judgment in that action was affirmed on appeal to this court. Openshaw v. Adams, 92 Idaho 488, 445 P.2d 663 (1968). On the related matter of settlement negotiations, see the opinion in Openshaw v. Allstate Ins. Co., 94 Idaho 192, 484 P.2d 1032 (May, 1971).

Allstate contact the Boise, Idaho, office of the Oregon Insurance Company who requested a copy of the accident report submitted to them by Richard Openshaw.

The respondent's claims manager in Boise, Mr. Cleone Puderbaugh, received the request. Since he was uncertain as to the proper procedures to follow, Puderbaugh phoned Mr. Wilbur Kennell, respondent's vice-president, in Portland, Oregon. In that telephone conversation Kennell advised Puderbaugh that the statement given to them by Openshaw would have to be subpoenaed.

Puderbaugh informed Allstate of the need for a subpoena; thereafter counsel for Allstate had issued by the clerk of the district court a subpoena duces tecum directing Puderbaugh to bring the Openshaw statement to the court.

Before being served Puderbaugh obtained the statement in question from the respondent's Portland, Oregon, office. On being served with the subpoena duces tecum, Puderbaugh handed the statement to the process server rather than personally travelling to the trial then underway at Gooding, Idaho. Allstate's counsel received the statement before the end of the trial but did not use it for impeachment purposes nor was it offered as evidence.

Appellants instituted an action setting forth four counts against respondent as well as Allstate Insurance Company in which they alleged (1) a conspiracy between the companies to defeat their claim against Mrs. Adams amounting to constructive fraud; (2) Oregon Automobile Insurance Company's conduct in aiding Allstate rendered it a constructive insurer of the Adamses and thus liable for the unsatisfied portion of the judgment obtained by the Openshaws against the Adamses; (3) Allstate's conduct constituted intentional interference with an advantageous contractual relationship; and (4) Oregon Automobile intentionally breached the confidential, fiduciary relationship for its pecuniary gain.

Allstate moved for summary judgment and its motion was granted. That action of the trial court was appealed. Judgment of dismissal in the appeal by the Openshaws (No. 10562) was entered December 2, 1969, and the Openshaws proceeded against the Oregon Automobile Insurance Company as the sole defendant.

In the trial of this action appellants introduced evidence bearing on two issues. First, they attempted to show that disclosure of the accident report caused Allstate's counsel to refuse to settle the action for a figure acceptable to the Openshaws. Second, they tried to show the disclosure of the statement to Allstate was by itself wrongful conduct not conforming to usual business practices of insurance companies and against the terms of the contract of insurance.

After trial to the court sitting without a jury, judgment was entered for respondent. In its memorandum decision, which also constituted the findings of fact and conclusions of law, the trial court held that there had been a failure on appellants' part to show that the statement had in any manner influenced the suit against Mrs. Adams or the settlement negotiations arising from the suit against the Adamses. On appeal the Openshaws concede their proof on this issue was indeed inadequate.

On the second issue the district judge did rule that respondent willfully and maliciously breached its duty to maintain the confidentiality of information provided it by its insureds. However, despite the breach the court refused to award damages, either actual or punitive, both of which were prayed for in the complaint. The court below reasoned that because the Openshaws had failed to show any injury and any damages which were compensable they would also not be able to receive punitive damages. The court also ruled they were not entitled to nominal damages.

The issue upon which the appellants ask this court to focus its attention is the issue of damages. They insist that despite the failure to prove measurable compensable

damages[2] they are yet, by right, entitled to nominal damages whenever there is an invasion of a distinct legal right. Appellants apparently do agree with the reasoning of the district court that Idaho law requires that as a prerequisite to an award of punitive damages there first be an award of either actual damages (nominal or compensatory) or equitable relief. Village of Peck v. Denison, 92 Idaho 747, 450 P.2d 310 (1969); Williams v. Bone, 74 Idaho 185, 259 P.2d 810 (1953).

As a starting point for our analysis it must be pointed out that the parties on this appeal assume that the conduct of Puderbaugh was tortious. Respondent only argues the lack of an injury for which appellants can be compensated by an award of damages. From the record and the briefs it appears appellants rely upon two separate theories of tort. The first is that respondent intentionally interfered with a business expectancy, to wit: the settlement negotiations. The second appears to be a negligence theory, where the degree of negligence amounted to willful and malicious conduct. The respondent does not attack the foundations of these theories. This opinion does not pass on the merits of these theories but accepts them solely for the purpose of deciding this case.

After consulting the record and decision of the trial court, we have concluded that the issue of the propriety of punitive or exemplary damages is the determining issue on this appeal.

▬ To be entitled to an award of punitive damages against a corporation the complaining party must show that the principal (or when the principal is a corporation, its directors and managing officers) participated in or authorized or ratified the agent's acts. Boise Dodge, Inc. v. Clark, 92 Idaho 902, 453 P.2d 551 (1969); Curtis v. Siebrand Bros. Circus & Carnival Co., 68 Idaho 285, 194 P.2d 281 (1948); Restatement of Torts, § 909.[3]

▬ The trial judge made no findings on the issue of participation, ratification or authorization by the corporation through its officers. However, the evidence in the record bearing on these matters is (a) the relevant testimony of Mr. Kennell, respondent's managing officer who stated that he orally told Puderbaugh to not release the statement to Allstate without a subpoena,[4] and (b) Mr. Puderbaugh's statement to the same effect as Kennell's version of the occurrence.[5]

From these statements one could not infer any wrongdoing on the part of Ken-

2. "In the instant case the other relief sought, actual damages, has not only failed of proof, but the record affirmatively establishes that in fact the plaintiffs were in no way damaged by defendant's conduct. Not only was there no damage done, there was no injury from which damages could even be inferred. * * *." Memorandum Decision of the Trial Court.

3. "Punitive damages can properly be awarded against a master or other principal because of an act by an agent if, but only if, (a) the principal authorized the doing and the manner of the act, or, (b) the agent was unfit and the principal was reckless in employing him, or (c) the agent was employed in a managerial capacity and was acting in the scope of employment, or (d) the employer or a manager of the employer ratified or approved the act."

4. On this point Kennell's testimony was as follows:

"Q. All right. Mr. Kennell, do you recall when the first time was you heard about Allstate's attempting to get at a statement with [sic] your insured?
A. If it had to be a date, I don't recall.
Q. Approximately when?
A. I don't know that. But I know the circumstances; I can remember—
Q. Well, would you relate for us the circumstances then.
A. Yes. Yes, I will. I was in the office and I received a phone call from our Boise branch manager. And he related to me that the Allstate Insurance Company had approached him to secure one of our files, so I told him that would have to be done by subpoena. And he took that information from me, and that is all I know except what I have heard since which happened."

5. In his deposition, made part of the record, Puderbaugh stated:
"Q. Now let's get back to the day you were contacted by representatives of

nell. Kennell instructed the employee properly, though perhaps he could have elaborated; there is nothing in the record to indicate that the employee would not follow the ordinary procedure for a subpoena duces tecum. The record is devoid of anything pertaining to the element of ratification which here becomes an essential element for any award of punitive damages against the respondent.

Judgment affirmed, costs to respondent.

McQUADE, C. J., and DONALDSON, SHEPARD and SPEAR, JJ., concur.

Allstate, and I would just like to have you tell us what you remember about this situation. What happened?
A. I was asked about this particular file. I at that time knew nothing about it. I don't remember if I wrote to the Portland office; I imagine I called. And with nothing but the name, I—no doubt they didn't—whoever contacted me didn't have our file number, but I found out there was a file and I talked to Mr. Kennell, who was vice-president in charge of our claims department, and asked about the loss report, furnishing the loss report, and informed him that there was a trial in progress in Gooding, Idaho, and he said any information will have to be subpoenaed, and that was it."