**PROTECTUS ALPHA NAVIGATION CO., LTD., Plaintiff-Appellee,**

v.

**NORTH PACIFIC GRAIN GROWERS, INC., Defendant-Appellant.**

No. 84–3912.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 15, 1985.

Decided Aug. 8, 1985.

John R. Brooke, Wood, Tatum, Mooser, Brooke & Holden, Portland, Or., for plaintiff-appellee.

John A. Flynn, James G. Nebel, Graham & James, San Francisco, Cal., for defendant-appellant.

Before PREGERSON and FERGUSON, Circuit Judges, and CURTIS,* District Judge.

CURTIS, District Judge.

Appellant, North Pacific Grain Growers, Inc. (hereinafter "North Pacific" or appellant) appeals from a judgment of the district court for the District of Oregon awarding appellee Protectus Alpha Navigation Co., Ltd. (hereinafter "Protectus" or appellee) damages of $9,577,760, comprised of $7,045,000 in general damages, $2,032,760 in prejudgment interest, and $500,000 in punitive damages. The damages stem from a fire aboard the vessel M/V Protector Alpha (hereinafter "the Protector") which began while the Protector was refueling at North Pacific's dock facility.

## FACTS

Protectus was the owner of the Protector, a bulk grain carrier of Cypriot registry. While the Protector was refueling at North Pacific's grain facility on the Columbia River, fire broke out aboard the vessel.

After the fire was discovered, the local Kalama Fire Department was called in to combat the fire, and firefighters and firefighting equipment from Cowlitz and Longview, two neighboring communities, were also brought in to assist in the effort. Soon thereafter, Coast Guard personnel arrived and a plan was formulated to extinguish the fire. By way of implementing the plan, quantities of film-forming foam and firefighting equipment were readied on the dock for use. As the flames were being brought under control, and at a point in time when, as several witnesses testified, the fire was within minutes of being extinguished, North Pacific's dock foreman Harry Swede Anderson arrived. Within five minutes of his arrival, and without consulting any of the firefighters, Anderson ordered the ship cast off from the dock. Chief Baxter and Assistant Chief Mesneak of the Longview Fire Department shouted to Anderson, directing him not to cast off the ship, but Anderson responded with obscenities and, with the help of another North Pacific employee, D. Van Skike, released the last line that held the ship to the dock.

Unable to manuever on her own smoke-choked engines, the vessel was cast hopelessly adrift, with several firefighters dangerously stranded aboard. The Protector was finally brought to rest on her anchor, which was dropped about one thousand yards downstream. Since the vessel was no longer accessible from the dock, where all of the firefighting equipment had been

---

* Honorable Jesse W. Curtis, United States District Judge for the Central District of California, sitting by designation.

left behind, further efforts to extinguish the fire were doomed.

The court found that appellant's conduct in casting off the vessel constituted negligence per se. It also found that such conduct, in the light of the circumstances, was grossly negligent, and assessed punitive damages.

## NEGLIGENCE PER SE

The court's holding that appellant's conduct constituted negligence per se was based upon its finding that the employees of appellant had violated Washington's Revised Code (WRC) § 9A.76.020 and Uniform Fire Code § 13.102, incorporated into Washington law by WRC § 19.27.030(3).

WRC § 9A.76.020, *Obstructing a Public Servant*, provides in part:

Every person who ... (3) shall knowingly hinder, delay, or obstruct any public servant in the discharge of his official powers or duties ... shall be guilty of a misdemeanor.

Uniform Fire Code § 13.102 provides: Any person who obstructs the operations of the Fire Department in connection with extinguishing any fire, or other emergency, or disobeys any lawful command of the chief or officer of the Fire Department who may be in charge at such a scene, or any part thereof, or any police officer assisting the Fire Department, shall be guilty of a misdemeanor.

■ North Pacific's first assertion is that Washington law is inapplicable because none of the responding fire departments had jurisdiction over a fire occurring aboard a ship on navigable waters. North Pacific argues that such jurisdiction is vested exclusively in the U.S. Coast Guard, whose authority is administered by the Captain of the Port. This contention is belied by the evidence. Captain Greiner, as Captain of the Port, prepared the Burning Ship Contingency Plan, which states that the Coast Guard's

interest in fighting fires involving vessels or waterfront facilities in or along the navigable waters of the United

States, or in waters in which a resultant pollution hazard would threaten navigable waters of the United States or its resources, ... does not extend to preemption of local responsibility and authority for firefighting.

The Federal Fire Prevention and Control Act of 1974, 15 U.S.C. §§ 2201(5) and 2209(a), further supports the proposition that Washington law is applicable.

North Pacific also argues that applicability of Washington law would destroy the uniformity of federal maritime law. However, in light of the fact that the Coast Guard's own plan envisioned local responsibility and authority for fires aboard ships, this argument is unpersuasive.

North Pacific also claims that the Washington statutes in question, by their preamble, title, and history, establish that they were designed to protect owners and occupants of buildings and adjoining structures and not foreign vessels on navigable waters. Specifically, North Pacific cites section 286 of the Restatement of Torts (Second) of 1975 for the proposition that section 13.102 of the Uniform Fire Code is inapplicable because the legislative purpose in incorporating the statute into state law was to set standards and specifications for fire protection in buildings.

Section 286 of the Restatement of Torts (Second) of 1975 provides that a court may adopt, as the standard of conduct of a reasonable man, the requirements of a statute or regulation whose purpose is (a) to protect the class of persons which includes the one whose interest is invaded; (b) to protect the particular interest which is invaded; (c) to protect that interest against the kind of harm which has resulted; and (d) to protect that interest against the particular hazard from which the harm results. Arguing that the Washington statutes cover buildings and not boats, appellant claims that the Washington statutes do not protect the "particular interest" which North Pacific employees allegedly invaded in casting the vessel adrift.

The district court rejected this contention and found the statute applicable to fire-

fighting operations on a dock. Judge Solomon looked to section 19.27.020 of the WRC, which sets out the purposes of Chapter 19 (the chapter incorporating the Uniform Fire Code into Washington Law). That section provides in part:

> The purpose of this chapter is to provide building codes throughout the state. This chapter is designed to effectuate the following purposes, objectives, and standards:
>
> (1) To promote the health, safety, and welfare of the occupant or users of buildings and *structures and the general public.* (Emphasis added.)

 Although we agree that the main purpose of the chapter is to provide building codes, the statute also is concerned with the health and safety of users of structures other than buildings. In casting the vessel adrift, in violation of firemen's orders, Anderson risked the safety of the firemen who were using the dock as a structure from which to fight the fire. Some were even stranded aboard the ship. Anderson jeopardized "the health, safety, and welfare of ... the general public" with which the statute is concerned.

The district court's finding of negligence per se is supported by an additional factor. Even if section 13.102 of the Uniform Fire Code were inapplicable, the court also found that North Pacific violated WRC § 9A.76.020, which makes obstructing a public servant in the discharge of his official powers or duties a criminal misdemeanor. No argument can be made that section 9A.76.020 does not cover such obstruction when it occurs on a dock. The undisputable applicability of WRC § 9A.76.020 would alone support a finding of negligence per se.

Finally, appellant contends that even if the above Washington statutes are applicable, the district court erred in failing to consider whether their violations should be excused. This contention is without merit. The district court considered in detail both the public and the private necessity defense. It concluded, as a factual determination, that North Pacific's acts were unreasonable and grossly negligent, and that the defenses (or excuses) of public and private necessity were unavailable.

## CAUSATION

Appellant objects to the district court's apportionment of liability. The court found that 92.5% of the loss was sustained after the ship was set adrift, and therefore attributed that percentage of liability to North Pacific.

Appellant contends that the district court erred in ignoring principles of comparative negligence and apportioning damages based on its view of causation, rather than culpability. Appellant cites *United States v. Reliable Transfer Co. Inc.,* 421 U.S. 397, 411, 95 S.Ct. 1708, 1716, 44 L.Ed.2d 251 (1975), where the Supreme Court first applied comparative fault to maritime collisions, for the proposition that damages must be apportioned according to the compartive degree of fault of the parties, rather than causation. *See also Pan-Alaska Fisheries, Inc. v. Marine Construction & Design Co.,* 402 F.Supp. 1187, 1188 (W.D. Wash.1975), *vacated on other grounds,* 565 F.2d 1129 (9th Cir.1977). Thus, as the argument goes, the district court's division of damages is legally incorrect in that it fails to recognize that the effects of appellee's negligence in starting the fire continued and contributed substantially to the eventual total loss of the vessel.

However, as Protectus points out, there is no shipowner negligence to "compare." Even if Protectus were negligent in causing the fire, such negligence had ceased to be an operating force when the vessel was cast off by North Pacific's employees. The testimony of each expert and fireman who viewed the fire that night was that the fire would have been put out in fifteen to twenty minutes had the vessel not been cast off.

 The principles of comparative negligence are not applicable when damages can be apportioned to separate causes based on evidence in the record. Restatement (Second) of Torts § 433A (1965), § 881 (1979); *Kalland v. North American Van Lines,*

716 F.2d 570 (9th Cir.1983). In *Kalland* this court said:

> Where injuries can properly be apportioned to separate causes based on evidence in the record, there is no occasion to invoke the doctrine of comparative negligence; and if injuries cannot be separately apportioned, then the comparative negligence ratio controls, unaltered by some independent assessment of degree of causation. The whole point of comparative negligence is that the relation between injury and cause cannot be accurately determined, and an allocation based on the degree of negligence of each party becomes the measure of liability.

716 F.2d at 573.

■ Since the damages were capable of being apportioned to separate causes based upon evidence in the record, the district court appears to have correctly held North Pacific responsible only for the damage the vessel sustained after it was cast off.

### SUPERCEDING CAUSE

Appellant next argues that the district court must have implicitly and incorrectly applied the doctrine of superceding cause, for the negligence of North Pacific's employees in releasing the vessel was dependent on the negligence of the crew of the vessel in causing the fire, and therefore could not, as a matter of law, supercede the shipowner's negligence.

However, it does not appear that the district court applied the doctrine of superceding cause. To the contrary, the court reasoned that North Pacific's action was not a superceding act of negligence, but the original cause of an uncontrolled fire. Nonetheless, even if the district court had applied the principles of superceding cause, its allocation would not have been improper, because of the nature of Anderson's act.

Section 442 of the Restatement (Second) of Torts lists several considerations which are important in determining whether an intervening force is a superceding cause. Among those factors are: (1) the fact that the intervening force is or is not a normal result of the situation created by the actor's negligence (§ 442(c)); (2) the fact that the intervening force is due to an act of a third person which is wrongful toward the other and as such subjects the third person to liability to him (§ 442(e)); and (3) the degree of culpability of a wrongful act of a third person which sets the intervening force in motion.

■ These factors all focus on the nature of Anderson's conduct, which the district court found to be so grossly negligent as to justify an award of punitive damages. The court found that (1) Anderson did not consult with any of the firefighters before ordering the ship cast off; (2) Anderson disobeyed the lawful commands of two fire chiefs who ordered him not to cast off the vessel; (3) Anderson jeopardized the lives of the twelve firefighters whom Anderson knew were still aboard the ship when he cast it off, one of whom was subsequently killed; and (4) Anderson's "perversity turned a small shipboard fire into a marine disaster." Given these findings, it appears that even if the district court implicitly found that Anderson's negligent act superceded that of Protectus, such a finding would not be clearly erroneous. Anderson's act was: (1) not a normal result of the situation (Restatement § 442(c)); (2) wrongful towards Protectus (§ 442(e)); and (3) culpable to a serious degree (§ 442(f)).

### EXCLUSION OF NATIONAL TRANSPORTATION SAFETY BOARD'S REPORT

■ Appellee contests the district court's exclusion from evidence of a report, including the factual findings, of the National Transportation Safety Board. In so doing, the court relied upon Title 49 U.S.C. § 1903(c), which provides:

> No part of any report of the Board, relating to any accident or the investigation thereof, shall be admitted as evidence or used in any suit or action for

damages growing out of any matter mentioned in such report or reports.

Although strict application of the statute has been somewhat modified in recent cases (*see Keen v. Detroit Diesel Allison,* 569 F.2d 547, 549–51 (10th Cir.1978); *American Airlines, Inc. v. United States,* 418 F.2d 180, 196 (5th Cir.1969); *Berguido v. Eastern Airlines, Inc.,* 317 F.2d 628, 631–32 (3rd Cir.), *cert. denied,* 375 U.S. 895, 84 S.Ct. 170, 11 L.Ed.2d 124 (1963)), so as to permit some reports of staff investigators and other personnel into evidence, such reports, to the extent they express agency views or conclusions as to the probable cause of the accident, are excludable under the rule. The district court had before it all seven volumes of the transcript of the Coast Guard hearing on which the report in question was based, and the excluded report was merely another trier of fact's conclusion as to what transpired on that fatal evening.

■■ We hold, therefore, that the exclusion of the report of the National Transportation Safety Board was not error.

## PUNITIVE DAMAGES

The district court awarded appellee $500,000 in punitive damages and costs. The court based the award on its finding that the grossly negligent actions of Anderson and Van Skike were done pursuant to North Pacific's policy, and approved by North Pacific after the fact.

■■ As an initial matter, federal law, rather than state law, controls the damages issue when the cause of action arises under maritime law. *Pizani v. M/V Cotton Blossom,* 669 F.2d 1084, 1088 n. 2 (5th Cir.1982). Punitive damages are available under the general maritime law. *Dyer v. Merry Shipping Co.,* 650 F.2d 622, 624–25 & n. 9 (5th Cir.1981) (listing decisions in accord); *In re Marine Sulphur Queen,* 460 F.2d 89, 105 (2d Cir.), *cert. denied sub nom. Marine Sulphur Transport Corp. v. Heard,* 409 U.S. 982, 93 S.Ct. 318, 34 L.Ed.2d 246 (1972); *Renner v. Rockwell International Corp.,* 403 F.Supp.

849, 852 (C.D.Cal.1975), *vacated and remanded on other grounds,* 587 F.2d 1030 (9th Cir.1978).

■■ Punitive damages serve the purpose "of punishing the defendant, of teaching him not to do it again, and of deterring others from following his example." Prosser, The Law of Torts § 2, at 9 (1971). *See also Smith v. Wade,* 461 U.S. 30, 36 n. 5, 103 S.Ct. 1625, 1629 n. 5, 75 L.Ed.2d 632 (1983) (deterrence); *International Brotherhood of Electrical Workers v. Foust,* 442 U.S. 42, 48, 99 S.Ct. 2121, 2125, 60 L.Ed.2d 698 (1979) (punishment and deterrence) (quoting *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 350, 94 S.Ct. 2997, 3012, 41 L.Ed.2d 789 (1974)). We are mindful that punitive damages are not a favorite in the law and are never awarded as of right, no matter how egregious the defendant's conduct, but may be imposed for that conduct which manifests "reckless or callous disregard" for the rights of others, *Smith v. Wade,* 461 U.S. 30, 51, 103 S.Ct. 1625, 1638, 75 L.Ed.2d 632 (1983), or for conduct which shows "gross negligence or actual malice or criminal indifference." *In re Marine Sulphur Queen,* 460 F.2d at 105.

North Pacific characterizes Anderson's conduct as stemming from a "justifiable concern" with preventing what could have been a catastrophic explosion. We can agree that he was greatly concerned, but the facts preclude describing his actions as "justifiable." When Anderson arrived on the scene, there was no visible conflagration. There were several firemen on the dock trying to tell Anderson that the fire was almost out. They ordered him not to release the ship. He defied their orders, cursed at the firemen and released the vessel. He acted hastily before inquiring as to the severity of the situation. Partly as a result of these thoughtless actions, one fireman was killed, another was seriously injured, and the vessel was ultimately destroyed. His conduct clearly manifested a "reckless or callous disregard" for the rights of the Protectus Alpha sufficient for the imposition of punitive damages.

The issue then become whether North Pacific is liable for punitive damages because of Anderson's conduct. There is a division of authority on this question. *Compare Doralee Estates, Inc. v. Cities Service Oil Co.*, 569 F.2d 716, 722 n. 6 (2d Cir.1977), *with Reiser v. District of Columbia*, 563 F.2d 462, 482 (D.C.Cir.1977). "A majority of courts, however, have held corporations liable for punitive damages imposed because of the acts of their agents, in the absence of approval or ratification." *American Society of Mechanical Engineers, Inc. v. Hydrolevel Corp.*, 456 U.S. 556, 575 n. 14, 102 S.Ct. 1935, 1947 n. 14, 72 L.Ed.2d 330 (1982) (citing W. Prosser, Law of Torts 12 (4th ed. 1971)). This is in accord with the "general rule of agency law, [under which] principals are liable when their agents act with apparent authority and commit torts...." *Id.* at 565–66, 102 S.Ct. at 1942 (footnote omitted).

■ We therefore subscribe to the now well-accepted standard of Restatement (Second) of Torts § 909, which states:

Punitive damages can properly be awarded against a master or other principal because of an act by an agent if, but only if,

(a) the principal or a managerial agent authorized the doing and the manner of the act, or

(b) the agent was unfit and the principal or a managerial agent was reckless in employing or retaining him, or

(c) the agent was employed in a managerial capacity and was acting in the scope of employment, or

(d) the principal or a managerial agent of the principal ratified or approved the act.

The Restatement standard largely follows the earlier teaching of *Lake Shore & Michigan Southern Railway Co. v. Prentice*, 147 U.S. 101, 13 S.Ct. 261, 37 L.Ed. 97 (1893), which was adopted by the Ninth Circuit in *Pacific Packing & Navigation Co. v. Fielding*, 136 F. 577 (9th Cir.1905), in allowing either prior corporate authorization or subsequent ratification of the employee's act to suffice for the imposition of punitive damages in the proper case. The Restatement goes a step farther than *Prentice* and *Fielding*, however, and also allows for such damages where the wrongful actor was in a "managerial capacity" performing within the "scope of his employment," thereby placing a reasonable burden on the employer to know its management personnel and choose them wisely.

■ We believe the standard of the Restatement better reflects the reality of modern corporate America. We agree that a corporation can act only through its agents and employees, and that no reasonable distinction can be made between the guilt of the employee in a managerial capacity acting within the scope of his employment and the guilt of the corporation. 22 Am.Jur.2d, Damages § 261 (1965). It seems obvious that no corporate executive or director would approve the egregious acts to which punitive damages would attach and, therefore, no recovery for more than compensatory damages could ever be had against a corporation if express authorization or ratification were always required. As we have already noted, most courts have rejected the corporate authorization or ratification standard. *Hydrolevel Corp.*, 456 U.S. at 575 n. 14, 102 S.Ct. at 1947 n. 14. *See, e.g., Mitchell v. Keith*, 752 F.2d 385, 390 (9th Cir.1985) (Ninth Circuit recognizes that California follows Restatement (Second) of Torts § 909); *Hatrock v. Edward D. Jones & Co.*, 750 F.2d 767, 771 (9th Cir.1984) (Ninth Circuit recognizes Idaho common law follows § 909); *Malandris v. Merrill Lynch, Pierce, Fenner & Smith*, 703 F.2d 1152, 1175 (10th Cir.1981)) (Colorado), *cert. denied,* —— U.S. ——, 104 S.Ct. 92, 78 L.Ed.2d 99 (1983); *Openshaw v. Oregon Automobile Insurance Co.*, 94 Idaho 335, 338, 487 P.2d 929, 932 (1971) (Idaho adopts § 909 as controlling); *Agarwal v. Johnson*, 25 Cal.3d 932, 950, 603 P.2d 58, 69, 160 Cal.Rptr. 141, 152 (1979) (California follows § 909); *Fisher v. Volz*, 496 F.2d 333, 349 (3d Cir.1974).

Some states have held employers liable for punitive damages on even broader grounds. *See, e.g., Stroud v. Denny's Restaurant, Inc.,* 271 Or. 430, 532 P.2d 790, 794 (1975) (Oregon extends liability to acts of even "menial" employees, not just "managerial" employees); *Southern Pacific Co. v. Boyce,* 26 Ariz. 162, 173–75, 223 P. 116, 120–21 (1924) (Arizona allows punitive damages against employers for wrongful acts of employees committed in furtherance of employer's business when employee is acting within the scope of his employment).

▮ Because Anderson was a managerial employee acting in the scope of his employment, we need not decide whether corporations should also be liable for punitive damages for acts of "menial" employees. The standard set forth in Restatement (Second) of Torts § 909 is sufficient to determine whether North Pacific is liable for punitive damages in this case. The district court's assessment of punitive damages was based on the doctrine of corporate authorization or ratification of an employee's conduct. However, the Restatement' provision for the imposition of punitive damages for the egregious acts of one employed in a managerial capacity and acting in the scope of employment seems better suited to the instant case. Absent a clear articulation of a company policy— which was not present in the instant case— corporate authorization or ratification of conduct as grossly negligent as that of Anderson is difficult to establish. However, as North Pacific's dock foreman, Anderson clearly occupied a managerial position. He performed a supervisory role, managing several employees. As evidenced by the facts of this case, he exercised a considerable amount of authority and discretion in running the operations of the dock. Furthermore, he clearly was acting within the scope of his employment when he cast off the vessel in defiance of firemen's orders. Thus, without reaching the district court's finding of corporate au-

thorization or ratification, we affirm its decision assessing punitive damages and costs against North Pacific.

For the foregoing reasons, the decision of the district court is AFFIRMED.