LUCELIA E. CHAPMAN *et al. vs.* HEZEKIAH S. PINGREE.

Oxford.   Decided October 31, 1877.

### Deed. Estoppel.

A grant of a township of land upon condition that the grantee settle thereon a specific number of families within a specified time, is a grant upon a condition subsequent.

A conveyance upon a condition subsequent vests the title in the grantee subject to its being revested in the grantor by entry for breach of the condition.

When one claiming title to land stands by, and, without objection, knowingly suffers another to execute and deliver a deed thereof to an innocent purchaser who believes he is obtaining the legal title thereto, he is thereby estopped to set up title thereto against the successor of such purchaser.

ON REPORT.

TRESPASS *quare clausum.*

*J. J. Perry,* for the plaintiffs.

*S. F. Gibson,* for the defendant.

VIRGIN, J.   The defendant admits that he entered upon, and cut and carried away the hay from the locus described in the writ, which consists of a twenty-five acre parcel of that part of lot 3, R. 7 in Riley Plantation, lying on the north side of Sunday River which flows through the lot; that it is the same twenty-five acres set-off by levy of an execution, Luther Perkins v. Mary Pingree, September 21, 1859; and that the judgment and levy were in all respects in conformity with law.

In a former action of alleged trespass upon the same locus brought by this defendant against a servant of these plaintiffs

(*Pingree* v. *Chapman*, not yet published) wherein the plaintiff in that action relied for his title upon a deed dated July 7, 1869, from Olive S. Littlehale to himself, this court decided that the land covered by the Perkins levy was expressly excepted in that deed ; that the grantee, therefore, derived no title thereby, and gave judgment against him. Now, this defendant claims title through a quitclaim deed from the same Olive S. Littlehale, not containing the exception mentioned, but purporting to release to the defendant all her interest in so much of lot 3 as lies on the north side of the river, (which includes the locus) which I. B. Bradley released to her by his deed of August 27, 1860. But the latter deed from Olive S. Littlehale to the defendant was not executed until September 17, 1875, nearly four years after the trespass complained of, and alone could afford him no defense. We, therefore, might well stop here and give judgment for the plaintiffs, had not the parties, submitted to our determination, "upon the facts agreed and evidence presented, the question of title, as between these parties to the land covered by the Perkins levy."

The defendant claims title from the commonwealth of Massachusetts through the mesne conveyances by I. B. Bradley and Olive S. Littlehale, as follows :

In January, 1796, the commonwealth, by its committee, duly appointed and empowered, in consideration of $4596.17, conveyed to one Phebe Ketchum, 26,000 acres of land, being what is now known as Riley Plantation, in the county of Oxford, on condition that the grantee settle thereon twenty-five families within a certain specified time. This condition being in its nature a condition subsequent, the title, in accordance with well established rules of law, passed to the grantee, subject to its being revested in the grantor by entry for breach of the condition.

By a resolve passed by the general court, on March 14, 1845, the land agent was directed to take such measures as he deemed necessary, to recover to the commonwealth the possession of lands conveyed, as this township was, in those cases where the condition had not been complied with, provided that compliance with the provisions of a resolve passed April 1, 1836, relating to fulfilling the conditions of the sale of public lands, shall be deemed a satisfac-

tory performance of the conditions; and provided further that the land agent shall first give notice to the delinquent proprietors as therein prescribed, and they fail to give evidence to him necessary to prove their title complete, on or before the succeeding December.

The resolve of April 1, 1836, is not in the reported evidence and we cannot take judicial notice thereof. *Simmons* v. *Jacobs*, 52 Maine, 147. However, from certain recitals in the deed of release, of February 23, 1848, from the land agent of Massachusetts to I. B. Bradley, (under which the defendant claims) it might seem that the resolve of April 1, 1836, in cases where the settling duty had not been fully performed, commuted so much thereof as remained unperformed on June 1, 1836, to the payment of $30 for each deficient family, with interest after that date; and that Bradley paid for three deficient families. Giving to these recitals the full force of legitimate evidence, we are still left without means of knowing how lot 3, R. 7 would be affected thereby; for there is no evidence that the land agent ever undertook any action under the resolve of March 14, 1845, to revest the title in the commonwealth, or that Bradley did so after the release of the township to him.

Bradley having received the interest of Massachusetts in the whole township, by his deed of quitclaim, of August 27, 1860, for a nominal consideration, released his interest in that part only of lot 3 lying north of the river, to Olive S. Littlehale, who, by her deed of quitclaim, of July 7, 1869, released the interest in the same which she derived from Bradley, "excepting a certain set-off of some twenty-five acres or less to one Luther Perkins," to the defendant, who, (as decided in *Pingree* v. *Chapman*, *supra*) derived no title thereby to the locus. The last link in the defendant's chain of record title, is another deed of quitclaim, of September 17, 1875, from the same Olive S. Littlehale to him, not containing the exception of the Perkins levy mentioned in her former deed, but concluding the description of the premises in the following language: "Meaning and intending hereby to convey to said Pingree the same real estate which I. B. Bradley conveyed to me by his deed dated August 27, 1860."

These last three deeds fail to show any title in the defendant;

and the dates and substance of the last two are stated here for a purpose to be hereafter noticed.

The plaintiffs trace their title, through sundry mesne conveyances, from Alden Blossom, as follows:

On July 28, 1834, Blossom, as sheriff of the county of Oxford, by virtue of a warrant from the state treasurer, sold and conveyed the whole township, to R. K. Goodenow; who, on January 11, 1841, sold and conveyed lot 3, R. 7, to Lot S. Coburn; who, on November 12, 1844, conveyed said lot to Hezekiah Pingree, who died some time in 1852, just when does not appear, but, as the defendant claims, just before May 20, 1852, when his son, S. O. Pingree, by his deed of warranty, of that date, conveyed that part of the lot lying on the north side of the river, to John Glidden; who, five days thereafterwards, to wit, on May 25, 1852, by deed of mortgage and on March 11, 1858, by deed of warranty, conveyed the same part of said lot to Mary Pingree. On September 21, 1859, Luther Perkins, having duly recovered a judgment in the supreme judicial court against Mary Pingree, and duly levied his execution on the *locus in quo*, conveyed the same by his deed of warranty, of April 28, 1866, to the plaintiffs, who, with their predecessors, have held the exclusive possession of the premises ever since the date of Goodenow's deed to Coburn, in 1841.

It is said this state could not tax the township in 1833, because of the provision in the constitution, Art. X, § 1, which declares that the "lands within said district (of Maine) which shall belong to the commonwealth, shall be free from taxation while the title to the said lands remain in the commonwealth." But as already seen, the title to these lands was not in the commonwealth after the conveyance to Phebe Ketchum in 1796.

It is also urged that when Hezekiah Pingree died, in 1852, he left as children and heirs, two sons, S. O. Pingree and Hezekiah S. Pingree, the defendant, and one daughter, Olive S. Littlehale; that there being no evidence of any release from the defendant to his brother, S. O. Pingree, they were tenants in common of the estate inherited from their deceased father; and that although S. O. Pingree's deed of warranty, of May 20, 1852, purported to convey the whole estate described therein to Glidden, it would in fact convey only an undivided part at best.

It appears, however, that the Pingrees, Olive S. Littlehale and Coburn were neighbors; that S. O. Pingree's deed to Glidden was a warranty of the entire fee in the land on the north side of the river; that within five days thereafter, Glidden mortgaged the same to the mother of the Pingree children, to secure to her the payment of $25 annually during her natural life; that on March 11, 1858, Glidden conveyed the same to her, by deed of warranty the execution of which was witnessed by the defendant, and in which the same premises are described and S. O. Pingree's deed to Glidden expressly referred to "for further particulars in relation to said lot;" that this last named deed, by its terms, conveyed the premises "as full satisfaction for all demands existing between the said Mary Pingree and the said John Glidden up to this date;" that neither in this nor in the former action, has the defendant, either in his own right, or through any conveyance or license, verbal or written from his sister Olive, pretended to set up any rights to the premises by descent. These facts all tend to show that there must have been in fact some division of the lot among the heirs whereby S. O. Pingree derived the full title to that portion on the north side of the river. However this may be, the circumstances satisfy us beyond all cavil, that the defendant was connusant of these transactions made for his mother's support, and that when he witnessed the execution of Glidden's deed to her, he knew its contents. And having thus stood by, and knowingly suffered the conveyance to be made, under an impression and belief on the part of the parties thereto that the legal title thereby passed, without making known his own title, (if he had any) the law will not permit him to be heard in setting up such claim now against the successors in title of his mother.

Our conclusion is, that the plaintiffs shall have judgment according to the terms of the report; and that as between these parties upon the facts agreed and the evidence presented in the report, the plaintiffs have the better title to the land covered by the levy.

APPLETON, C. J., DICKERSON, BARROWS, DANFORTH and LIBBEY, JJ., concurred.