Regina M. **MURATORE**, Plaintiff,

v.

**M/S SCOTIA PRINCE, her tackle, apparel, etc., in rem;**

**Prince of Fundy Cruises Ltd., and Transworld Steamship Co., Inc., in personam, Defendants.**

Civ. No. 86–0141 P.

United States District Court, D. Maine.

June 9, 1987.

---

Michael X. Savasuk, Portland, Me., for plaintiff.

Leonard Langer, Thompson McNaboe & Ashley, Portland, Me., for defendants.

GENE CARTER, District Judge.

## MEMORANDUM OF DECISION AND ORDER

Plaintiff brought suit to recover damages for physical injuries and mental pain and suffering allegedly suffered while on board the M/S SCOTIA PRINCE. Jurisdiction was based on this Court's admiralty and maritime jurisdiction, diversity of citizenship with a proper amount in controversy, and the Court's power of pendent and ancillary jurisdiction.

Following a bench trial, the Court issued a Memorandum of Decision and Order, setting out in detail its findings of fact and conclusions of law. The Court found for the Plaintiff on her claim for intentional infliction of severe emotional distress, and awarded her $5,000 in compensatory damages and $25,000 in exemplary damages. In accordance with the Court's decision, the Clerk of Court entered judgment for the Plaintiff in the amount of $30,000. 656 F.Supp. 471.

Now pending before the Court are several postjudgment motions. First, the Plaintiff has applied for prejudgment and postjudgment interest. Second, all three original Defendants—Prince of Fundy Cruises, Ltd. (Prince of Fundy), Transworld Steamship Co., Inc. (Transworld), and the M/S SCOTIA PRINCE (SCOTIA PRINCE)—have moved to alter or amend the judgment. Finally Plaintiff has submitted an Amended Bill of Costs seeking reimbursement for specified items. The Court will discuss each of these motions in turn.

## I. PLAINTIFF'S APPLICATION FOR PREJUDGMENT AND POSTJUDGMENT INTEREST

Plaintiff seeks prejudgment and postjudgment interest pursuant to general maritime law and 28 U.S.C. § 1961 (1982). Defendant objects to Plaintiff's application for prejudgment interest, arguing *inter alia*

that prejudgment interest must be claimed at trial and awarded, if at all, as part of the initial decree.

Under federal admiralty law, an award of prejudgment interest rests within the discretion of the trier of facts. *Templeman v. Chris Craft Corp.*, 770 F.2d 245, 247 (1st Cir.), *cert. denied*, 474 U.S. 1021, 106 S.Ct. 571, 88 L.Ed.2d 556 (1985); *Robinson v. Pocahontas, Inc.*, 477 F.2d 1048, 1053 (1st Cir.1973).[1] *See also Furtado v. Bishop*, 604 F.2d 80, 98 (1st Cir.1979) (same rule applies in nonadmiralty actions decided under federal law). Prejudgment interest should be awarded, if at all, as compensation for the wrong done. *Sabine Towing & Transportation Co. v. Zapata Ugland Drilling, Inc.*, 553 F.2d 489 (5th Cir.1977).

In the present case, the Plaintiff failed to generate the issue of prejudgment interest at trial. The Court was therefore deprived of the opportunity to hear relevant evidence, *e.g.*, evidence of the appropriate rate of interest or evidence of any undue delay by either party in bringing this action forward. The Court recognizes that because this case was tried as a bench trial, there would be no need in any case to convene a jury for the purpose of determining prejudgment interest. Nonetheless, the issue of prejudgment interest was an issue for the trier of fact, and the Plaintiff's failure to raise the issue at trial precludes her from doing so at this late date. *See Pocahontas*, 477 F.2d at 1053 (concluding that it would be inappropriate to remand issue of prejudgment interest to trial court where issue had not been submitted to jury).

The Court therefore denies Plaintiff's application for prejudgment interest.

Plaintiff also applies for postjudgment interest pursuant to 28 U.S.C. § 1961. Because Defendants have failed to file any objection to the motion, the Court deems any objection to be waived. *McDermott v. Lehman*, 594 F.Supp. 1315 (D.Me.

1. Admiralty law provides the rule of decision in any case brought to enforce a cause of action cognizable in admiralty. *Pocahontas*, 477 F.2d at 1052–53.

1984). An award of postjudgment interest shall therefore be entered in accordance with the federal statute.

## II. MOTIONS TO ALTER OR AMEND JUDGMENT

Defendants Prince of Fundy, Transworld, and the SCOTIA PRINCE each move separately and on different grounds to alter the judgment. The Court will consider each motion in turn.

■ First, the SCOTIA PRINCE moves to alter the judgment on the grounds that the *in rem* claims against the vessel were dismissed. That position is correct: the Court did order dismissal of the claims against the SCOTIA PRINCE. Memorandum of Decision and Order at 8. Inclusion of the SCOTIA PRINCE in the judgment was therefore a clerical mistake, which the Court hereby remedies by ordering dismissal of any and all *in rem* causes of action in this case.[2] *See* Fed.R.Civ.P. 60(a).

■ Second, Transworld seeks to have the judgment against it altered or vacated, arguing that the Court made no finding that Transworld bears any liability for the damages award; additionally, Transworld asserts that it never received service, so that Transworld is not a party. Again, the Court adopts the moving party's position. The Court specifically determined liability only against Prince of Fundy; that liability was based on Prince of Fundy's status as bareboat charterer of the SCOTIA PRINCE and Prince of Fundy's special duties as a carrier of passengers. If not explicit, it was clearly implicit in the Court's decision that the responsibility and liability for damages awarded rested with Prince of Fundy.[3]

Finally, Prince of Fundy moves to alter or amend the judgment against it. Prince of Fundy asserts three reasons for such an amendment. First, Prince of Fundy argues that the Court's decision was based on erroneous findings of fact regarding responsibility for the photographers' conduct. Second, Prince of Fundy argues that even if it was responsible for the photographers' conduct, an award of punitive damages is inappropriate because Prince of Fundy did not authorize or ratify the photographers' act. Third, Prince of Fundy argues that the award of punitive damages violates the first amendment of the United States Constitution.

Prince of Fundy argues that the Court's finding of liability "seemed to rest principally" on two conclusions: "(1) that Prince of Fundy and Floating Fleet, Ltd., the corporation that contracted with the photographers' employer, Intermed, were not truly independent corporations, and (2) that Prince of Fundy derived pecuniary benefit from the photographers' commercial activity." Memorandum in Support of Defendant Prince of Fundy Cruises, Ltd.'s Motion to Alter and Amend and for Relief from Judgment at 2.

■ Prince of Fundy's argument clearly mischaracterizes the Court's opinion. First, that part of the Court's opinion dealing with Prince of Fundy's responsibility for the photographers' conduct explains at great length the special duties owed by Prince of Fundy—as carrier and as bare boat charterer—to the passengers traveling on board the vessel. Memorandum of Decision and Order at 479. The Court also considered the fact that the photographers' names appeared on the crew list, and that Prince of Fundy supervised the vessel's operations. *Id.* at 479. Rather than relying on whatever corporate structure existed among the entities involved, the Court expressly stated that "[r]egardless of whatever contractual agreements existed between Prince of Fundy, Floating Fleet, and Intermed, it is clear to the Court that Prince of Fundy was the party with ultimate responsibility on board the SCOTIA PRINCE." *Id.* The Court is satisfied that, taken as a whole, the findings of fact clearly support the legal conclusion that Prince

---

**2.** In any event, Plaintiff has not objected to Prince of Fundy's motion to alter or amend the judgment; any objection is therefore deemed waived. *McDermott v. Lehman, supra.*

**3.** Again, Plaintiff failed to object timely to Transworld's motion to later or vacate the judgment, thereby waiving any objection she might have had. *See supra* note 2.

of Fundy should be held liable for the photographers' conduct.

█ Second, the Court believes that Prince of Fundy has misconstrued the Court's statement that Prince of Fundy derived pecuniary benefit from the photographers' commercial activity. Whether or not Prince of Fundy actually received a prearranged "share" from the photographic concession, Prince of Fundy can hardly dispute that its objective in putting together a package of services was to promote its tour. Even if Prince of Fundy did not specifically advertise that a photographer would be on board, it is beyond the power of the Court's imagination to consider the photographic concession merely as some sort of gift to the passengers. If Prince of Fundy itself did not derive any direct income from the concession, it at least derived an indirect pecuniary benefit—or attempted to do so—by including the concession in its total package of services. It is this broader sense of pecuniary benefit that the Court's opinion intended to suggest, and the Court is convinced that the facts of this case—and a realistic assessment of entities operating for commercial profit—support a finding that Prince of Fundy did engage the photographers in order to derive a pecuniary benefit.

█ Prince of Fundy next argues that even if it were responsible for the photographers' conduct, an award of punitive damages is inappropriate because Prince of Fundy did not authorize or ratify the acts supporting an award of damages. In support of its position, Prince of Fundy cites the *Restatement (Second) of Torts*, section 909, and *Protectus Alpha Navigation v. North Pacific Grain Growers, Inc.*, 767 F.2d 1379 (9th Cir.1985).

Section 909 of the *Restatement* establishes certain situations in which punitive damages can be awarded against a principal for the acts of its agent. Specifically, the *Restatement* suggests that such an award of punitive damages is appropriate if the principal authorizes or ratifies the agent's act, or if the agent was employed in a managerial capacity and was acting within the scope of employment.[4]

The case law on this issue is not fully illuminating. In *Protectus*, the case cited by Prince of Fundy, the Ninth Circuit affirmed an award of punitive damages assessed against a grain terminal owner for the acts of its dock foreman acting in a managerial capacity within the scope of employment. The court stated that "most courts have rejected the corporate authorization or ratification standard." 767 F.2d at 1386 (citing *American Society of Mechanical Engineers, Inc. v. Hydrolevel Corp.*, 456 U.S. 556, 575 n. 14, 102 S.Ct. 1935, 1947 n. 14, 72 L.Ed.2d 330 (1982)). Although it is not clear, the context of the statement in *Protectus* suggests that the court was indicating that authorization or ratification was not necessary if the agent was acting in a managerial capacity—a position clearly consistent with the *Restatement*.

It is not clear in the present case, however, that the photographers were acting in a managerial capacity.[5] Nevertheless, the

---

**4.** Section 909 provides:

Punitive damages can properly be awarded against a master or other principal because of an act by an agent if, but only if,
(a) the principal or a managerial agent authorized the doing and the manner of the act, or
(b) the agent was unfit and the principal or a managerial agent was reckless in employing or retaining him, or
(c) the agent was employed in a managerial capacity and was acting in the scope of employment, or
(d) the principal or a managerial agent of the principal ratified or approved the act.

*Restatement (Second) of Torts* § 909 (1979).

**5.** Plaintiff recites facts that might support a finding that the photographers were acting in a managerial capacity. Plaintiff's Objection to Prince of Fundy Cruises, Ltd.'s Motion to Alter or Amend the Judgment at 7–8. The issue of managerial capacity, however, was not litigated as such at trial, and the Court made no specific finding of fact on that issue. It would therefore be inappropriate for the Court to base its decision on the pending motions on a finding that the photographers were acting in a managerial capacity. Rather, the Court bases its decision, as set out in the text, on the principles established in *Goddard v. Grand Trunk Ry.*, 57 Me. 202 (1869).

Court is convinced that an award of punitive damages is appropriate. The court in *Protectus* itself went on to cite other decisions that have assessed punitive damages against a principal for *any* acts committed by an employee in furtherance of the employer's business. *Protectus,* 767 F.2d at 1387 (referring to cases decided under Oregon and Arizona law). The only Maine case on point, *Goddard v. Grand Trunk Ry.,* 57 Me. 202, 223–28 (1869), provides particularly persuasive reasoning.[6] *Goddard,* like the present case, involved a common carrier. As the Maine court stated in *Goddard:*

> [T]here is no class of cases where the doctrine of exemplary damages can be more beneficially applied than to railroad corporations in their capacity of common carriers of passengers; and it might as well not be applied to them at all as to limit its application to cases where the servant is directly or impliedly commanded by the corporation to maltreat and insult a passenger, or to cases where such an act is directly or impliedly ratified; for no such cases will ever occur.

57 Me. at 223.

In the absence of any Maine law to the contrary, the Court finds *Goddard* ample authority to award punitive damages in the present case.

 Finally, Prince of Fundy argues that the award of punitive damages violates the first amendment of the United States Constitution. The award of punitive damages, argues Prince of Fundy, "seems to rest largely on a finding that the photographers' continuously directed 'lewd comments' at the Plaintiff"; Prince of Fundy asserts that, to the extent the award of

punitive damages punishes free speech, the award violates the first amendment. Although not raised at trial, the Court will address this argument briefly to reject its validity.

Contrary to Prince of Fundy's characterization, the Court's award of punitive damages *did not* rest "largely" on a finding that the photographers made one or more "lewd comments." Rather, the import of the decision was that the continued harassment—by the picture-taking itself, the alteration and display of photographs, and the constant badgering of Plaintiff *along with* the comments made—could hardly be described as mere accident, or even negligence, but only as intentional. The law is clearly established that "even crude speech may be entitled to constitutional protection." *Cohen v. California,* 403 U.S. 15, 91 S.Ct. 1780, 29 L.Ed.2d 284 (1971); *see also State v. John W.,* 418 A.2d 1097, 1108 (Me.1980). As stated above, however, it was the conduct of the photographers taken as a whole upon which the Court based its decision to award punitive damages. The Court is satisfied that the Plaintiff indeed suffered severe emotional distress, thus making an award of punitive damages appropriate.

Finding each of Prince of Fundy's challenges to be without merit, the Court denies Prince of Fundy's motion to alter or amend the judgment against it.

## III. BILL OF COSTS

Plaintiff, as the prevailing party in this action, is entitled to recover her costs. Fed.R.Civ.P.Rule 54(d). Plaintiff has submitted an amended bill of costs,[7] supported

---

**6.** Although an 1869 case, *Goddard* continues to be good law. *See American Society of Mechanical Engineers, Inc., v. Hydrolevel Corp.,* 456 U.S. 556, 575 n. 14, 102 S.Ct. 1935, 1947 n. 14, 72 L.Ed.2d 330 (1982).

**7.** Plaintiff seeks the following costs:

Filing Fee ............................ $ 60.00

Deposition Costs:

Hampden County Sheriff fees for service of Deposition Subpoena on Mr. Stec, Dr. Opper, and Mrs. Biron ............... $ 84.80

Court Reporters for Depositions of Mr. Pols and Mr. Baird ................... $167.00

Court Reporters for Depositions of Mr. Ravenna, Mr. Poneleit, Dr. Opper, Mr. Stec, and Mrs. Biron ................. $382.10

Witness Fee, David Dodge, for trial ...... $ 30.00

Witness Fee, Marlene Lemoine, and subsistence of $68 and travel of 446 miles at $.25 per mile, including tolls at $4.30, totaling $115.80 ........................ $183.80

Affidavit of Michael X. Savasuk in Support of Bill of Costs.

by the affidavit of her attorney; Prince of Fundy challenges certain costs specified therein.

First, Prince of Fundy challenges the costs of serving a deposition subpoena on Dr. Richard Opper. Plaintiff's attorney's affidavit avers that service was made on Dr. Opper by a sheriff in Hampden County, Massachusetts. Prince of Fundy claims that the subpoena must be void because Dr. Opper's deposition was actually taken in Portland, Maine—a place more than one hundred miles from the residence of Dr. Opper. The Court is persuaded that Prince of Fundy's position is correct. Any person can be required to attend a deposition within one hundred miles from his or her place of residence, employment, or business, or other convenient place by order of the Court. 9 C. Wright & A. Miller, *Federal Practice and Procedure* § 2458, at 96–97 (Supp.1986). Any other subpoena is void. *See, e.g., Sykes International, Ltd. v. Pilch's Poultry Breeding Farms, Inc.,* 55 F.R.D. 138 (D.Conn.1972). In the case at bar, service was made in Hampden County, Massachusetts—a location more than one hundred miles from the city where the deposition was actually taken. The subpoena is therefore invalid, and Prince of Fundy will not be required to bear the cost of service of a subpoena upon Dr. Opper for his deposition.

Prince of Fundy next challenges Plaintiff's claimed costs for the depositions of Hank Pols, Richard Baird, Giuseppe Ravenna, and Klaus Poneleit. Prince of Fundy claims that it listed those witnesses and offered their transcripts, so that the Plaintiff is not entitled to those costs. Deposition costs are recoverable when the deposition was received into evidence. 10 C. Wright, A. Miller, M. Kane, *Federal Practice and Procedure* § 2676, at 335 (footnote omitted). But depositions noticed and paid for by a defendant are not taxable

as costs to the plaintiff. *See Kane v. Martin Paint Stores, Inc.,* 439 F.Supp. 1054, 1059 (S.D.N.Y.1977). Plaintiff is, however, entitled to recover any copying costs actually incurred. *Templeman v. Chris Craft Corp.,* 770 F.2d 245. Plaintiff is therefore entitled to recover any costs actually incurred with respect to the depositions specified, including any copying costs; but is not entitled to recover the costs for any notices or any fees for those depositions already paid by the Defendants.

Finally, Prince of Fundy challenges Plaintiff's claim to the witness fees for Marlene Lemoine. Plaintiff seeks sixty-eight dollars ($68.00) in subsistence and one hundred fifteen dollars and eighty cents ($115.80) in travel expenses pursuant to 28 U.S.C. § 1821. Prince of Fundy claims certain testimony suggests that Ms. Lemoine rode together with the Plaintiff to Portland, Maine for the trial. Prince of Fundy, however, does not cite the Court to any specific part of the record, and the Court has found no such suggestion on its own. The Court will therefore allow Plaintiff's claim for sixty-eight dollars ($68.00) in subsistence, and ninety-five dollars and seventy-three cents ($95.73) of the claimed travel expenses.[8]

## IV. CONCLUSION AND ORDER

In accordance with the foregoing, it is hereby *ORDERED:*

(1) That Plaintiff's application for prejudgment interest be, and it is hereby, *DENIED;*

(2) That Plaintiff's application for post-judgment interest be, and it is hereby, *GRANTED;*

(3) That Defendant M/S SCOTIA PRINCE's motion to vacate the judgment against it be, and it is hereby, *GRANTED;*

---

**8.** The proper rate for travel by private automobile is 20.5 cents per mile. *See* 28 U.S.C. § 1821 (travel allowance for witnesses is that prescribed for official travel of federal employees); 1–A Guide to Judiciary Policies and Procedures, ch. V, part C, para. 5.2 (1986) (mileage rate is 20.5 cents per mile). The Court may, in its

discretion, allow reimbursement for distances in excess of 100 miles. 10 C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 2678, at 381 (1983). The Court therefore allows 446 miles at 20.5 cents, plus $4.30 for tolls, for a total of $95.73.

(4) That Defendant Transworld's motion to vacate the judgment against it be, and it is hereby, *GRANTED;*

(5) That Prince of Fundy's motion to amend the judgment be, and it is hereby, *DENIED;*

(6) That Prince of Fundy be, and it is hereby, *ORDERED* to pay Plaintiff costs consistent with this opinion.