72 F.3d 136
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
WASHINGTON PUBLIC POWER SUPPLY SYSTEM, Plaintiff-Appellant,
v.
PITTSBURGH-DES MOINES CORP., a Pennsylvania corporation;
American Insurance Company, a New Jersey
corporation, Defendants-Appellees.
 No. 94-35841.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Nov. 13, 1995.
Decided Dec. 7, 1995.
 
 Before: WRIGHT, FERNANDEZ and KLEINFELD, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Washington Public Power Supply System (WPPSS) appeals the district court's judgment dismissing with prejudice its complaint which alleged a breach of contract and a breach of warranty against Pittsburgh-Des Moines Corporation (PDM).[1] The dismissal of the complaint followed a jury verdict in favor of PDM on issues related to WPPSS's claim of breach of contract against PDM. A previous jury had decided the breach of warranty issue in favor of PDM. We affirm.
 
 DISCUSSION
 1. Prior Verdict
 
 3
 In Washington Pub. Power Supply Sys. v. Pittsburgh-Des Moines Corp., 876 F.2d 690, 695-96 (9th Cir.1989) (PDM I), we affirmed a jury verdict that the parties did not intend to have the Contract 213A provisions govern WPPSS's preserved warranty claims. In Washington Pub. Power Supply Sys. v. Pittsburgh-Des Moines Corp., No. 91-35669, memorandum at 13, 18 (9th Cir. Jan. 26, 1993) (PDM II), we ruled that the jury verdict as to the warranty claims, and this court's affirmance of that verdict in PDM I, did not collaterally estop WPPSS from claiming a breach of contract under the provisions of Contract 213A.
 
 
 4
 Although our decision in PDM II mandated that collateral estoppel could not be used to prohibit WPPSS from raising its breach of contract claim, we did not rule on the propriety of informing the jury of the prior verdict. On remand, the district court did not estop WPPSS from raising the breach of contract claim. It simply allowed reference to the result of the prior verdict and instructed upon it. Thus, the district court did not exceed our mandate in PDM II or run afoul of the law of the case doctrine. See Odima v. Westin Tucson Hotel, 53 F.3d 1484, 1497 (9th Cir.1995); Herrington v. County of Sonoma, 12 F.3d 901, 904-05 (9th Cir.1993); Thomas v. Bible, 983 F.2d 152, 154 (9th Cir.), cert. denied, --- U.S. ----, 113 S.Ct. 2443, 124 L.Ed.2d 661 (1993).
 
 
 5
 In addition, the instruction about the previous jury determination was not prejudicial to WPPSS. It is true that "admission of a prior judicial opinion as substantive evidence of a fact then in issue presents the danger that a jury may give the judicial opinion undue weight or be confused, believing the earlier court's findings somehow binding on it." United States v. Perry, 857 F.2d 1346, 1351 (9th Cir.1988); see also Commodity Futures Trading Comm'n v. Co Petro Mktg. Group, Inc., 680 F.2d 573, 584 (9th Cir.1982). However, the district court merely instructed the jury that previous determinations had been made regarding the warranty claims. The previous determinations were the findings of the previous jury, but the court did not instruct that the determinations had been made by a jury. For all the current jury knew, they could have been made by anyone, even the parties themselves. The district court also instructed the jury that it was to determine whether WPPSS reserved a breach of contract claim in modification 164, explained the difference between a breach of contract and a breach of warranty, and took pains to avoid giving the warranty determinations disproportionate weight. It instructed the jurors that the determinations "may be considered by" them and that the determinations "should only be considered along with the other evidence presented...."
 
 
 6
 The district court's instruction minimized any confusion created by the reference to the prior determinations. There was no unfair prejudice to WPPSS. The district court did not err. See Perry, 857 F.2d at 1351-52; Commodity Futures, 680 F.2d at 584.
 
 2. Bifurcated Trial
 
 7
 A district court "may order a separate trial of any claim, cross-claim, counterclaim, or third-party claim, or of any separate issue or of any number of claims, cross-claims, counterclaims, third-party claims, or issues...." Fed.R.Civ.P. 42(b); see also Exxon Co. v. Sofec., Inc., 54 F.3d 570, 575 (9th Cir.1995), petition for cert. filed, 64 U.S.L.W. 3070 (U.S. July 24, 1995) (No. 95-129). "A district court has broad discretion to determine whether evidence is relevant." United States v. Lopez, 803 F.2d 969, 972 (9th Cir.1986), cert. denied, 481 U.S. 1030, 107 S.Ct. 1958, 95 L.Ed.2d 530 (1987).
 
 
 8
 In PDM I, we affirmed the district court's exclusion of evidence regarding a breakdown of PDM's quality assurance program at the time modification 164 was negotiated. PDM I, 876 F.2d at 696. We agreed with the district court that the evidence was not relevant to the limited issues of "whether 213A or 213B warranties govern[ed] WPPSS's claims and whether 213A warranties attached before or after completion of work." Id. We then stated that our conclusion that the evidence was properly excluded "obviously would not apply in a subsequent trial if the nature, extent or dollar consequences of PDM's quality assurance problems were an issue at trial." Id. Nothing in our statements suggested that we meant to restrict the district court's discretion to bifurcate the trial. See Exxon, 54 F.3d at 575. All we said was that the issues were trial issues. The district court's decision that it would first try other issues, which became dispositive, did not change that.[2]
 
 
 9
 Thus, the district court did not abuse its discretion when it limited the bifurcated jury trial to the issues of whether Contract 213A included a provision that PDM was responsible for costs arising from an improper quality assurance program and whether modification 164 reserved a breach of contract claim arising from a breach of Contract 213A. See Fed.R.Civ.P. 42(b); Exxon, 54 F.3d at 575.
 
 
 10
 Those issues were preliminary to WPPSS's claim of damages for breach of contract. The case was complicated because of the differing provisions of the two contracts involved (Contract 213A and Contract 213B), the modification bridging the two contracts (modification 164), questions of whether a breach of contract claim had been reserved, which contract controlled the reserved claim, whether a failure to implement a proper quality assurance program constituted a breach of contract, and, finally, damages. The district court properly limited the issues to the preliminary ones. If the jury answered "no" to one of the first two questions on the verdict form, then WPPSS's claim could not be sustained and a great deal of unnecessary trial time could be saved, as it was.[3] WPPSS was not unfairly prejudiced by the bifurcation.
 
 3. Contract Interpretation
 
 11
 WPPSS argues that the district court erred when it denied a motion for summary judgment. However, we will not review the denial of a motion for summary judgment after a jury has decided the case. See Lum v. City & County of Honolulu, 963 F.2d 1167, 1169-70 (9th Cir.), cert. denied, --- U.S. ----, 113 S.Ct. 659, 121 L.Ed.2d 585 (1992); Locricchio v. Legal Servs. Corp., 833 F.2d 1352, 1358-59 (9th Cir.1987). Nevertheless, we will review the district court's actions to the extent that WPPSS's claim is that the district court should have decided the contract interpretation question itself because WPPSS also appeals the district court's denial of its Rule 50(b) motion.
 
 
 12
 "Where a contract's meaning is not clear on its face, its interpretation depends upon the parties' intent at the time it was executed, which is an issue for the trier of fact." Laborers Health & Welfare Trust Fund v. Kaufman & Broad, 707 F.2d 412, 418, (9th Cir.1983); see also Arizona Laborers v. Conquer Cartage Co., 753 F.2d 1512, 1515 (9th Cir.1985). Moreover, under the law of the state of Washington, "plain meaning" is not a talisman that obviates the use of extrinsic evidence. See Berg v. Hudesman, 801 P.2d 222, 228-29 (Wash.1990) (en banc). Even if the contract language is not ambiguous, extrinsic evidence may be admissible. Id. at 230. The Washington courts will consider the "entire circumstances under which the contract was made," and even the "subsequent conduct of the contracting parties." Id. at 229.
 
 
 13
 The district court found that Contract 213A was ambiguous on the question of whether PDM was to be paid the cost of correcting nonconforming work during the period before turnover. The district court cited the provision in Contract 213A which states that PDM was to be paid for all unit price work according to a formula that multiplied an hourly unit rate by the number of direct labor hours performed (p 12.1.1). That payment provision made no mention of nonpayment for work to repair nonconforming work, and it was in the Special Conditions portion of the contract. That portion took precedence over the General Conditions portion in which WPPSS finds the provision which it claims requires PDM to repair nonconforming work without charge (p 28). See p 2.1 (order of precedence of conflicting provisions). We agree with the district court that the conflict between the contract provisions created an ambiguity to be resolved by the trier of fact. It was resolved against WPPSS.[4]
 
 
 14
 In fine, Contract 213A contained conflicting provisions. Because the words of Contract 213A did not unambiguously indicate which party would bear the cost of nonconforming work, the district court properly submitted the issue to the jury. See Arizona Laborers, 753 F.2d at 1515; Laborers Health & Welfare, 707 F.2d at 418. The district court did not err when it declined to determine the contract interpretation question itself.
 
 AFFIRMED
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 The American Insurance Company (AIC) is also a defendant in its capacity as surety for PDM
 
 
 [2]
 WPPSS's assertion that bifurcation prevented it from presenting relevant evidence is without merit. Expert testimony that PDM had breached Contract 213A, that damages ensued from that breach, that it would be commercially reasonable for WPPSS to attempt to preserve a claim in negotiations, and the like was either irrelevant or so obvious that the musings of an expert would have been unhelpful. Certainly exclusion of that evidence was not an abuse of discretion. See Lopez, 803 F.2d at 972. Percipient witnesses were not precluded from testifying to their knowledge
 
 
 [3]
 Looking back over the course of this decade-long litigation, arguably it would have been more efficient to try all issues together long ago. Of course, that hindsight does not demonstrate, or even suggest, an abuse of discretion
 
 
 [4]
 We recognize WPPSS's assertion that this is a question of contract construction rather than contract interpretation and that the two are treated differently. See 801 P.2d at 226. However, the task here was not merely to decide what consequences flowed from known terms. See id. It was to decide what terms the parties had agreed to, in other words, what the parties meant the terms to mean