**Eric RESNER, Plaintiff–Appellee,**

**v.**

**ARCTIC ORION FISHERIES, a Washington Corporation; Polmar Fisheries, Inc., a Washington Corporation, Defendants–Appellants.**

**No. 95–35257.**

United States Court of Appeals, Ninth Circuit.

Submitted * April 11, 1996.

Memorandum April 15, 1996.

Order and Opinion May 7, 1996.

---

* The panel unanimously finds this case suitable for decision without oral argument. Fed. R.App. P. 34(a); Ninth Circuit Rule 34–4.

Martinus L. Johnson, Jr., Magnuson, Johnson & Lowell, Redmond, Washington, for plaintiff-appellee.

Paul N. Daigle, J.J. Hutson, Schwabe, Williamson, Ferguson & Burdell, Seattle, Washington, for defendants-appellants.

Before: WRIGHT, PREGERSON and TASHIMA, Circuit Judges.

## ORDER

The Memorandum disposition filed on April 15, 1996, is amended and redesignated as an Opinion authored by Judge Wright.

## OPINION

WRIGHT, Circuit Judge:

While working aboard a commercial fishing vessel, Resner lost four fingers to a fish-heading machine. In return for $16,200, he released his employer, Arctic Orion, from liability for his injury. The district court, after a bench trial, found that Resner had not freely and advisedly given up his claims against Arctic Orion. We affirm.

## BACKGROUND

Resner was employed as a processing foreman on the vessel Arctic Orion. On his first voyage, he was injured while operating an air-driven fish-header. The machine works like a guillotine: the operator pushes a fish into place, then presses a foot pedal to release a blade that cuts off the fish's head. Resner was finishing his shift at the fish-header when, despite signs warning employees to keep their hands away from the blade, he decided to clear some debris from the machine. As he did so, he accidentally brushed the foot pedal. The blade fell, severing parts of four fingers of Resner's left hand.

Arctic Orion took responsibility for Resner's medical treatment and rehabilitation. It assigned a claims manager who met with Resner and learned of his financial difficulties and his overriding desire to return to sea. The claims manager told Resner that he could not be reassigned until he released the company from liability. Resner, believing that he was entirely responsible for the accident and eager to get back to work, suggested that Arctic Orion pay him just enough to cover some outstanding debts. The company readily agreed. It paid Resner $16,200, promised him at-will employment, and sent him back to sea.

Once he returned to work, Resner found that he was physically unable to perform his duties. He sued the company, alleging negligence and unseaworthiness. Arctic Orion presented the executed release as an affirmative defense.

At trial, expert testimony portrayed Resner as trusting, unsophisticated and easily influenced. There was also evidence that the company knew from the beginning that the accident might have been avoided if the machine had been equipped with wrist restraints. Resner knew nothing about wrist restraints.

The district court invalidated the release. It found Arctic Orion negligent for failing to provide wrist restraints and failing to train the crew in the use of the fish-header. The court assessed Resner's fault at 50% and awarded damages of $130,000. Arctic Orion argues on appeal that the release was valid.

## ANALYSIS

We review for clear error the findings of fact of a district court sitting in admiralty. *Exxon Co. v. Sofec, Inc.*, 54 F.3d 570, 576 (9th Cir.), *cert. granted*, —— U.S. ——, 116 S.Ct. 493, 133 L.Ed.2d 419 (1995). We reverse only if we are left with " 'a definite and firm conviction that a mistake has been committed.' " *Id.* (quoting *Concrete Pipe & Prod. of Cal., Inc. v. Constr. Laborers Pension Trust*, 508 U.S. 602, 623, 113 S.Ct. 2264, 2280, 124 L.Ed.2d 539 (1993)). We have no such conviction here.

The fact that seamen are wards of admiralty has "marked consequence on the treatment given" their releases. *Garrett v. Moore–McCormack Co.*, 317 U.S. 239, 247–48, 63 S.Ct. 246, 251–52, 87 L.Ed. 239 (1942). Seamen's releases are not governed by the usual contract principles; they are more closely analogous to agreements between fiduciaries and beneficiaries. *Id.* at 247, 63 S.Ct. at 251–52. The vessel owner, like a fiduciary, has the burden of proving the validity of the release on which it relies. *Id.*

To satisfy its burden, the vessel owner must "affirmatively show that no advantage has been taken." *Id.* It must prove that the release

> was executed freely, without deception or coercion, and that it was made by the seaman with a full understanding of his

rights. The adequacy of the consideration and the nature of the medical and legal advice available to the seaman at the time of signing the release are relevant to an appraisal of this understanding.

*Id.* at 248, 63 S.Ct. at 252.

■ To determine the validity of the release, Judge Dwyer heard testimony from, among others, Resner, the corporate representatives with whom he·negotiated the release, a psychologist who examined him, and his treating physician. The evidence revealed several facts from which the court could conclude that Arctic Orion had not met its burden under *Garrett.*

■ The consideration paid, $16,200, was plainly inadequate for the loss of four fingers. Although that factor standing alone cannot invalidate the release, the vessel owner's burden of proof becomes "particularly heavy where the consideration is inadequate." *Davis v. American Commercial Lines,* 823 F.2d 1006, 1008 (6th Cir.1987), *cert. denied,* 484 U.S. 1067, 108 S.Ct. 1031, 98 L.Ed.2d 995 (1988) (citing *Garrett,* 317 U.S. at 248, 63 S.Ct. at 252).[1]

The manner in which the amount of consideration was determined is further evidence of Resner's lack of comprehension. Although Resner himself suggested the amount, he based his offer not on an informed evaluation of his damages but on the sum of his outstanding debts. The company never evaluated Resner's claim before the settlement. It simply accepted the amount he suggested, basing its decision on Resner's repeated "admission" of responsibility. But the company also knew that Resner was unaware that the use of wrist restraints could have prevented his accident, and that therefore the accident was not solely his fault. The court found these facts significant because they tend to establish that the inadequacy of the consideration was the result of Resner's misapprehension of his rights.

The nature of the legal advice available to the seaman is also a factor under *Garrett.* Resner had no legal advice other than that of his·employer. It gave him a written explanation of the existence of legal remedies for unseaworthiness and under the Jones Act, but there was evidence that Resner did not read or comprehend these explanations. He testified that he regarded the forms as "red tape" that he had to cut through before being permitted to return to sea.

Arctic Orion was not obliged to explain the merits of his claim to him or to send him to a lawyer. But Resner might have been less eager to sign away his rights had he more fully understood the level of responsibility that vessel owners bear under the Jones Act and the doctrine of unseaworthiness, and the differences between these remedies, the general law of torts, and workers' compensation schemes.

■ The company argues that the court improperly considered Resner's state of "psychological denial" and his financial pressures as bases for invalidating the release. Our reading of the findings of fact does not support these contentions: the court related these issues to Resner's understanding of his rights. The court also emphasized Resner's desire, for financial and psychological reasons, to get back to work. The company capitalized on that desire by implying that Resner had to release his legal claims against his employer before he could return to Alaska. Although the district court's opinion does not explicitly advert to "deception or coercion," *see Garrett,* 317 U.S. at 248, 63 S.Ct. at 252, its remarks on these facts suggest that it found some element of overreaching at work here.

## CONCLUSION

■ We are bound to "scrutinize[ ] carefully" any release of claims against the vessel owner, *Whaley v. Rydman,* 887 F.2d 976, 978 (9th Cir.1989), keeping in mind that the ves-

1. Arctic Orion argues that the court viewed inadequate consideration as a independent ground for invalidating the release rather than as mere evidence of Resner's comprehension of his legal rights. *See Bass v. Phoenix Seadrill/78, Ltd.,* 749 F.2d 1154, 1162 (5th Cir.1985) (case remanded where district court treated adequacy of consideration as determinative). It did not. It specifically found that the inadequate consideration showed that Resner "lacked a full understanding of the nature and extent of potential tort liability...."

sel owner must show that the release was "fairly made and fully comprehended by the seaman," and that "no unfair advantage" was taken. *Garrett,* 317 U.S. at 247, 248, 63 S.Ct. at 251–52, 252. In the circumstances presented, we cannot say that the district court clearly erred when it determined that Arctic Orion did not meet that burden.

**AFFIRMED.**