145 F.3d 1338
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Glen KORPI, Plaintiff-Appellant,
v.
UNITED STATES OF AMERICA, Defendant-Appellee.
 No. 97-15704.
D.C. No. CV-95-03170-FSL.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted April 15, 1998.
Decided April 28, 1998.
 
 Appeal from the United States District Court for the Northern District of California, F. Steele Langford, Magistrate Judge, Presiding.
 Before FLETCHER, D.W. NELSON and BEEZER, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Glen Korpi appeals the trial court's entry of final judgment in favor of the United States of America. Korpi seeks damages for the loss of his sailboat and for injuries that he suffered when the U.S. Coast Guard attempted to rescue him near Monterey, California. We have jurisdiction, 28 U.S.C. § 1291, and affirm.
 
 
 3
 * Korpi was voyaging alone from southern California to Seattle, Washington, aboard his sailboat, the Dialogue. North of San Francisco he decided to return to southern California. His autohelm failed, though, and he determined to put into Monterey Harbor to replace it. Unable to recognize the entry to the harbor, he found himself instead just off Asilomar Beach, on the ocean side of Point Pinos at the south end of Monterey Bay. Winds of 25 to 35 knots and swells of 12 feet, topped with wind waves of 3 to 4 feet, combined to place the Dialogue in a perilous position on a lee shore. The Dialogue 's diesel engine had failed and Korpi was unable to sail away from the shore for fear of grounding. He therefore deployed an anchor.
 
 
 4
 Responding to a radio call in which Korpi described himself as "trapped," the United States Coast Guard station at Monterey dispatched a 44 foot motor lifeboat (MLB) with a crew of five. Arriving at the scene, the crew of the MLB found the Dialogue close inshore, its anchor deployed but dragging and the sailboat yawing wildly in the wind and waves. Fearing that the MLB's propellers could become fouled in the anchor line, the MLB crew instructed Korpi to cut the anchor rode. He did so, and they threw him a light heaving line attached to a three inch towline. Korpi was unable to bring the towline aboard and so tied off the heaving line. The heaving line broke, and the Dialogue was cast onto the rocks. Korpi was rescued from the surf by a Coast Guard helicopter. The Dialogue was damaged beyond repair, and Korpi had to have it removed at a cost of $18,373. He also suffered injuries, including two broken ribs, during the rescue.
 
 
 5
 In September 1995 Korpi brought suit against the United States under the Suits in Admiralty Act, 46 U.S.C. §§ 741-752, and the Public Vessels Act, 46 U.S.C. §§ 781-790. Korpi claimed that the crew of the MLB acted negligently in ordering him to cut his anchor line and in failing to pay out the towline properly. The action was tried to a magistrate judge, who entered judgment in favor of the United States. This timely appeal followed.
 
 II
 
 6
 We review findings of fact made by an admiralty trial court for clear error. Resner v. Arctic Orion Fisheries, 83 F.3d 271, 273 (9th Cir.1996). We will reverse "only if we are left with a definite and firm conviction that a mistake has been committed." Id.
 
 III
 
 7
 Under either the Public Vessels Act or the Suits in Admiralty Act, the United States is liable only to the extent that a private person would be liable under the same circumstances. Dearborn v. Mar Ship Operations, Inc., 113 F.3d 995, 996 (9th Cir.1997). In a case of rescue at sea, "a rescuer will be held liable only (1) for negligent conduct that worsens the position of the victim or (2) for reckless and wanton conduct in performing the rescue." Berg v. Chevron U.S.A., Inc., 759 F.2d 1425, 1430 (9th Cir.1985). Korpi does not argue that the MLB crew acted in a reckless or wanton manner. To recover, he was required to show that the MLB crew acted negligently and that, because of that negligence, he was left in a worse position. See id.
 
 
 8
 The trial court found that the conduct of the MLB crew did not worsen Korpi's position because the Dialogue "would inevitably have gone aground and been destroyed because its anchor was dragging ." The trial court's finding is supported by the eyewitness testimony of the MLB crew, who saw the Dialogue being driven toward the shore before the anchor rode was cut. Korpi argues that the MLB crewmembers were mistaken and that the evidence demonstrates instead that the Dialogue 's anchor was holding. "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." Anderson v. City of Bessemer City, 470 U.S. 564, 574, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985). The trial court, as the finder of fact, chose to accept the testimony of the MLB crew. That decision is not clearly erroneous.
 
 
 9
 Because Korpi cannot show that the actions of the MLB crew left him in a worse position, he cannot recover. See Berg, 759 F.2d at 1430. The judgment of the trial court is AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or used by the courts of this circuit except as provided by Ninth Circuit Rule 36-3